Robert BUCKHALTER,
Plaintiff-Appellant,

v.

PEPSI–COLA GENERAL BOTTLERS,
INC., Roger Thomas Kiekhofer, & Robert Friend, Defendants-Appellees.

No. 84–2559.

United States Court of Appeals,
Seventh Circuit.

Argued April 23, 1985.

On Remand From the U.S. Supreme
Court July 18, 1985.

Decided May 29, 1987.

Robert P. Morris, Edwin F. Mandel, Legal Aid Clinic, Chicago, Ill., Irene L. Hill, E.E.O.C., Washington, D.C., for plaintiff-appellant.

William R. Sullivan, Jr., Seyfarth, Shaw, Fariweather & Geraldson, Chicago, Ill., for defendants-appellees.

Before BAUER, Chief Judge, COFFEY, Circuit Judge, and GRAY, Senior District Judge.[*]

COFFEY, Circuit Judge.

The United States District Court for the Northern District of Illinois dismissed Buckhalter's Title VII and Section 1983 claims on the basis of an administrative *res judicata* finding that Buckhalter failed to avail himself of the opportunity to litigate these issues in the administrative hearing. This Court affirmed the order of the District Court. Subsequent to our decision in this case the United States Supreme Court decided *University of Tennessee v. Elliott,* — U.S. ——, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986), and contemporaneous therewith vacated and remanded this court's decision in *Buckhalter* for further consideration in light of *Elliott,* — U.S. ——, 106 S.Ct. 3328, 92 L.Ed.2d 735.

I

In *Elliott,* the Supreme Court held that, under the reconstruction civil rights statutes, federal common-law rules of preclusion will apply where a state agency acts in a judicial capacity to resolve disputed issues of fact where the parties had a previous adequate opportunity to litigate, since Congress in enacting the civil rights statutes' did not intend to create an exception to the general rule of preclusion. *Elliott,* 106 S.Ct. 3225. *See also, Utah Construction & Mining Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966). Robert Elliott was a black employee who was discharged from the University of Tennessee for inadequate work performance as well as misconduct on the job. Elliott pursued his state administrative remedies and the state administrative law judge (ALJ), after hearing extensive evidence, made a finding that Elliott's discharge had not been racially motivated. Elliott appealed the ALJ's decision to the vice president for agriculture of the University of Tennessee, the proper reviewing agency under Tennessee law, who upheld the ALJ's ruling.

Instead of seeking review of the administrative proceedings in state court, Elliott pursued his remedies in federal court under Title VII and 42 U.S.C. § 1983. The Supreme Court analyzed Elliott's Title VII and § 1983 claims separately and held that Elliott was entitled to a trial *de novo* in federal court on his Title VII claim, but was precluded from relitigating his civil rights claim under 42 U.S.C. § 1983 in the federal courts since Congress did not intend the Reconstruction civil rights statutes to create an exception to general rules of preclusion. 106 S.Ct. at 3225.

In the instant case, the defendant, Pepsi-Cola General Bottlers, Inc. ("Pepsi-Cola") discharged the plaintiff, Robert Buckhalter, a black employee, on June 10, 1978, for violating a company rule which prohibited employees from possessing alcoholic beverages or non-prescription drugs at anytime on company property. Buckhalter filed a grievance through his union representative and a grievance hearing was held pursuant to the terms of the collective bargaining agreement entered into between Pepsi-Cola

---

* The Honorable William P. Gray, Senior District Judge of the Central District of California, is sitting by designation.

and Teamsters Local 744, Buckhalter's union. The Industrial Relations Manager of Pepsi-Cola, who presided over the grievance hearing, upheld Buckhalter's discharge. *See In re Buckhalter and Pepsi-Cola General Bottlers, Inc.*, 7 Ill.H.R.C. Rep. 96, 103–07 (1982). Buckhalter appealed this decision to the company's Labor Management Committee who affirmed the decision of the company's Industrial Relations Manager.

In August, 1978, Buckhalter filed a charge with the Illinois Fair Employment Practice Commission ("FEPC") alleging that Pepsi-Cola had engaged in an act of racial discrimination in that it had reinstated a white employee while they refused to reinstate Buckhalter who was charged with the same type of misconduct as the white employee. In March, 1979, the FEPC conducted an investigation and thereafter made a finding that there was a lack of substantial evidence to support Buckhalter's claims of race discrimination. Buckhalter requested the FEPC to reconsider its decision and on May 29, 1979 the FEPC reversed its prior determination and issued a racial discrimination complaint.

In accordance with the provisions of Illinois law, the FEPC assigned Buckhalter's race discrimination complaint to the Administrative Law Judge, Patricia Patton. A four-day adversarial hearing was held and both Pepsi-Cola and Buckhalter were represented by counsel; each side conducted and submitted extensive pre-hearing discovery as well as exhaustive legal memoranda in support of their respective positions. At the hearing the parties examined and cross-examined witnesses in accord with the applicable Illinois Rules of Evidence.

In March 1982, the ALJ issued findings of fact and conclusions of law. *See In re Buckhalter*, 7 Ill.H.R.C.Rep. at 102–15. The ALJ found that Buckhalter's race discrimination claim was without merit and that Pepsi-Cola had established a legitimate, non-discriminatory reason for Buckhalter's discharge.

In November 1982, a three-member panel of the Illinois Human Rights Commission ("HRC") affirmed the ALJ's ruling on the basis that the facts contained in the administrative record were not against the great weight of the evidence and dismissed the complaint. Buckhalter then requested a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC") and received it on March 7, 1983. Buckhalter, rather than obtaining judicial review of the state agency decision in the Circuit Court of Cook County, chose to pursue his Title VII claim in the federal court, and on May 22, 1983, Buckhalter filed a separate lawsuit in federal court alleging race discrimination in violation of Title VII, 42 U.S.C. § 2000e–2(a) and 42 U.S.C. § 1981.

## II

### BUCKHALTER'S TITLE VII CLAIM

Buckhalter and Elliott both sought federal review of their Title VII claims in federal court after adverse administrative decisions. The court in *Elliott* held that general rules of preclusion bar relitigation of administrative fact finding unless there is Congressional intent to the contrary. 106 S.Ct. at 3225. The court in *Elliott* analyzed Title VII and the history of the 1972 amendments and found that Congress intended that employees have the right to a trial *de novo* following administrative proceedings when contesting a discharge under Title VII:

"On the basis of our analysis in *Kremer* [*v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982)] and *Chandler* of the language and legislative history of Title VII, we conclude that ... Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims."

*Elliott*, 106 S.Ct. at 3225. *See also Chandler v. Roudebush*, 425 U.S. 840, 848, 96 S.Ct. 1949, 1953, 48 L.Ed.2d 416 (1976).

■ The Illinois Human Rights Commission determined that Buckhalter was discharged for legitimate nondiscriminatory reasons. Buckhalter brought a Title VII action in federal court immediately after the Illinois HRC had denied his claim. No state court reviewed Buckhalter's Title VII

claim prior to his filing suit in federal district court as Buckhalter had not brought an action in state court. Therefore, under the Supreme Court's decision in *Elliott,* the determination of the Illinois Human Rights Commission that Buckhalter's termination was not discriminatory is not entitled to preclusive effect in the federal courts. Buckhalter is entitled to a *de novo* review of his Title VII claim in federal court and accordingly we reverse that portion of the district court's summary judgment order dismissing Buckhalter's Title VII claim against the defendant.

## III

## BUCKHALTER'S CIVIL RIGHTS CLAIM

■ The Supreme Court in *Elliott* found that the general rules of preclusion apply to the various civil rights statutes because absent a clear showing that Congress intended that employees be afforded a trial *de novo* on these claims. 106 S.Ct. at 3225–26. In *Elliott,* the court specifically analyzed section 1983 claims and found that neither the plain language of the statute nor the legislative history of section 1983 suggest that Congress intended to foreclose using traditional doctrines of preclusion. *Id.* The court stated:

"We also see no reason to suppose that Congress, in enacting the Reconstruction Civil Rights statutes, wished to foreclose the adoption of traditional principles of preclusion to such subsequent developments as the burgeoning use of administrative adjudication in the 20th century."

*Id.* The courts have construed section 1981 as analogous to § 1983 for purposes of the effect to be given state court judgments under 28 U.S.C. § 1738:

"Both Acts reflect a desire to alter federal-state relations to ensure fair adjudication of constitutional claims; neither suggests that state judgments fairly rendered be reviewed *de novo* by a federal tribunal."

*Davis v. United States Steel Supply,* 688 F.2d 166, 174–77 (3d Cir.1982) (en banc) *cert. denied* 460 U.S. 1014, 103 S.Ct. 1256,

75 L.Ed.2d 484 (1983). *See also Mitchell v. National Broadcasting Co.,* 553 F.2d 265 (2d Cir.1977). From our reading of the Supreme Court's decision in *Elliott* and our own research we have not discovered any legislative history establishing that Congress intended that the civil rights statutes were to foreclose application of the common-law doctrine of preclusion in discharge cases like Buckhalter, and therefore Buckhalter is precluded from relitigating his section 1983 claim in federal courts if: (1) the State agency has acted in a judicial capacity; (2) has resolved disputed issues of fact properly before it; and (3) the parties have had an adequate opportunity to litigate the issues.

A. Judicial Capacity of State Agency

■ The record reveals that once the HRC received Buckhalter's claim of racial discrimination, it appointed Chief Administrative Law Judge Patricia Patton to preside over the matter. The parties engaged in extensive pre-trial discovery and in March 1980, the ALJ conducted an adjudicatory hearing of some four days in duration. Buckhalter and Pepsi-Cola, each represented by counsel, filed exhaustive memoranda of law in support of their respective positions and at the hearing each party examined and cross-examined witnesses at the hearing in accord with the applicable Illinois Rules of Evidence. In addition, the parties introduced some ninety exhibits and documents, including statistical data of the patterns and racial breakdowns of Pepsi-Cola's employee discharges. The parties made opening and closing statements to the ALJ and were allowed to argue a multitude of evidentiary issues. The proceedings were recorded in five volumes totaling some 680 pages. After a most thorough hearing, the ALJ reviewed the record and in March 1982, issued a detailed, fourteen-page opinion subsequently published in the Illinois Human Rights Commission Reporter, pursuant to Illinois law. *See In re Buckhalter,* 7 Ill.H.R.C.Rep. at 102. The opinion contained thorough findings of fact, conclusions of law, and a cogent legal analysis applying the relevant facts to the Illinois law of employment discrimination.

In view of the fact that the HRC judicial proceedings were conducted in the same manner as a trial in Illinois state court, we are convinced that the HRC was acting in a judicial capacity. This court held, in *EZ loader Boat Trailers, Inc. v. Cox Trailer, Inc.*, 746 F.2d 375 (7th Cir.1984), that the United States Patent Office's Trademark Trial and Appeal Board was acting in a judicial capacity because similar to Buckhalter's proceeding before the HRC since the parties had the benefits of "an adversary proceeding. Both parties ... were represented by attorneys before the Board; both presented evidence and submitted briefs." 746 F.2d at 378. In the present case, Buckhalter and Pepsi-Cola were each represented by counsel, engaged in prehearing discovery, filed memoranda of law in support of their respective positions, examined and cross-examined witnesses, introduced exhibits, and argued numerous evidentiary issues throughout the adversarial proceeding. Moreover, the ALJ made extensive findings of fact and conclusions of law, and applied the proper burden of proof for a claim of employment discrimination as set forth by the Supreme Court. A three-member panel of the Commission affirmed the ALJ's decision in a published opinion. Thus, we hold the HRC was acting in a judicial capacity when dismissing Buckhalter's claim that his civil rights had been violated since the proceedings before the HRC were conducted in the same manner with the same safeguards (hearings) as a trial in Illinois state court: (1) the parties were represented by counsel; (2) the parties engaged in extensive pretrial discovery; (3) the parties filed and the court received extensive memorandums of law; (4) the parties were allowed to thoroughly examine and cross-examine witnesses; (5) the parties introduced exhibits; (6) the parties argued evidentiary issues during the adversarial proceeding; and (7) the court rendered findings of fact and conclusions of law.

## B. Resolution of Disputed Issues of Fact

██ It is obvious that Buckhalter obtained a final judgment on the merits of his race discrimination claim from the Illinois Human Rights Commission. The ALJ found that "despite all of complainant's detailed testimony on the events of the night in question, I have no reason to believe that Robert Buckhalter's discharge came about as a result of an indiscriminate imposition of discipline upon black employees." *In re Buckhalter*, 7 Ill.H.R.C.Rep. at 109. The ALJ ruled that Pepsi-Cola had established a legitimate, non-discriminatory reason for discharging Buckhalter and that Buckhalter failed "to show [Pepsi-Cola's] given reasons to be pretextual." *Id.* at 114. The HRC affirmed the ALJ's decision stating that "the facts contained in the administrative record are not against the manifest weight of the evidence...." *Id.* at 98. According to the HRC, Pepsi-Cola "had a valid nondiscriminatory reason— doubt as the sufficiency of its case against Ault—for reinstating Ault but not complainant or Lynch." *Id.* at 99. These factual issues were properly presented to the HRC, an agency composed of nine members appointed by the governor of Illinois. Its purpose is "[t]o issue, receive, investigate, conciliate, settle, and dismiss charges." Ill.Rev.Stat. Ch. ¶ 7–101(B). It is authorized "to hear and decide by majority vote requests for review and complaints filed...." Ill.Rev.Stat. Ch. 68 ¶ 8–102. Thus, the administrative law judge in rendering her decision that the defendants did not terminate Buckhalter for impermissible discriminatory reasons, properly resolved the disputed issues of fact presented for agency review.

## C. Adequate Opportunity to Litigate the Issues

██ Buckhalter was represented by an attorney throughout the pre-hearing discovery and the four-day adjudicatory hearing. In addition, Buckhalter was entitled to and did contest the ALJ's findings of fact and conclusions of law before a three-member panel of the HRC. The panel reviewed not only the merits of Buckhalter's claim but also the procedural and evidentiary rulings made by the ALJ. Finally, Buckhalter was entitled to appeal the HRC decision to the Cook County Circuit Court

pursuant to the Administrative Review Act of Illinois but instead requested a right-to-sue letter from the Equal Employment Opportunity Commission. Thus, throughout the proceedings before the Illinois Human Rights Commission, Buckhalter had several opportunities to present evidence in support of his allegations that he was terminated because of his race and to controvert the evidence presented by the defendants to establish their legitimate reasons for terminating Buckhalter but failed to do so. The adversarial process provided ample opportunity for Buckhalter to raise and address each issue concerning his disputed termination. We disagree with the plaintiff-appellant Buckhalter's contention and cannot imagine how the Illinois HRC could have provided a more thorough and exhaustive opportunity for Buckhalter to litigate his claims. Accordingly, because Buckhalter had an adequate opportunity to litigate before the Illinois HRC the issues involved in his section 1981 claim against the defendants we hold he is precluded from pursuing his section 1981 claim in federal court. *See, e.g., Unger v. Consolidated Foods Corp.,* 693 F.2d 703, 705–06 (7th Cir.1982), *cert. denied,* 460 U.S. 1102, 103 S.Ct. 1801, 76 L.Ed.2d 366 (1983) (judicial proceedings of the Illinois FEPC satisfy due process requirements).

## IV

The common-law doctrine of preclusion bars Buckhalter from relitigating his civil right claims concerning his alleged racially motivated discharge in federal court. From our review of the record and relevant case law, we have discovered no evidence that Congress intended that persons who contest the decision on their § 1981 claim reached after thorough administrative agency hearings are entitled to a trial *de novo* in the federal courts. Where the HRC has acted in a judicial capacity to resolve disputed issues of fact properly before it and the claimant has been provided with an adequate opportunity to litigate the civil rights issues to their proper conclusion and judgment, he is barred from relitigating the § 1981 claim in federal court. Accordingly, we affirm that portion of the district court's order dismissing Buckhalter's civil rights claims under section 1981 and reverse that portion of the district court's order dismissing Buckhalter's Title VII claim and remand this case to the district court for further proceedings consistent with the Supreme Court's decision in *Elliott* and this opinion.