Elius Lamar REED, Plaintiff–Appellant,

v.

AMAX COAL COMPANY,
Defendant–Appellee.

Nos. 90–1127, 92–1730.*

United States Court of Appeals,
Seventh Circuit.

Submitted May 19, 1992.

Decided June 4, 1992.**

---

* Reed filed an appeal on April 1, 1992, docketed in this court as No. 92–1730, from the district court's denial of his motion to add his labor union as a second defendant. We now consolidate the two appeals and affirm case 92–1730 for the jurisdictional reasons provided by the district court. We accordingly do not consider Reed's claims against the labor union.

** This opinion was originally issued as an unpublished order.

James B. Roberts, Elius L. Reed, Carbondale, Ill., for plaintiff-appellant.

Byron L. Myers, Lisa D. Tobin, Ice, Miller, Donadio & Ryan, Indianapolis, Ind., Terry R. Black, Campbell, Furnall, Moore & Jacobsen, Mt. Vernon, Ill., for defendant-appellee.

Before CUMMINGS and CUDAHY, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.

PER CURIAM.

Elius Reed alleges that AMAX Coal Company (AMAX) violated Title VII of the Civil Rights Act of 1964 and § 1981 of the Civil Rights Act of 1866 when it terminated his employment. *See* 42 U.S.C. § 2000e *et seq.;* 42 U.S.C. § 1981. After considering Reed's claims, the district court granted summary judgment in favor of AMAX. Reed now appeals, challenging summary judgment on both claims and raising several collateral issues. We affirm.

## I. PROCEDURAL HISTORY

AMAX discharged Reed after allegedly finding him sleeping on the job. Reed believed that the discharge was racially motivated and filed a discrimination charge with the Illinois Department of Human Rights ("the Department"). The Department issued a complaint against AMAX, and Reed, represented by counsel, proceeded to a hearing before an Administrative Law Judge (ALJ). The ALJ found in favor of AMAX, and Reed appealed to the Illinois Human Rights Commission (IHRC). The IHRC affirmed the ALJ.

Reed did not seek judicial review of the IHRC's decision in state court. Instead, after receiving a right to sue letter from the EEOC, he filed a timely complaint alleging violations of Title VII and 42

U.S.C. § 1981 in federal district court. He later amended his complaint to include violations of the collective bargaining agreement and the First Amendment.[1] On June 13, 1986, the district court granted summary judgment on the § 1981 claims in favor of AMAX. Both parties then moved for summary judgment on the Title VII claim. The district court granted AMAX's motion, denied Reed's motion as moot, and entered final judgment in favor of AMAX. Reed appealed.

On appeal, Reed argues that the district court erred by (1) granting summary judgment in AMAX's favor on the Title VII claims, (2) granting summary judgment on the § 1981 claims, (3) issuing a protective discovery order, (4) failing to consider violations of the collective bargaining agreement, and (5) refusing relief under Fed. R.Civ.P. 60(b).

## II. ANALYSIS

### A. Summary Judgment Was Appropriate on the Title VII Claims.

This court reviews de novo the district court's grant of summary judgment. *Hayes v. Otis Elevator Co.*, 946 F.2d 1272, 1277 (7th Cir.1991). When reviewing the decision, we must "view the record and all inferences drawn from it in the light most favorable to the party opposing the motion." *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991). We grant summary judgment if, when viewed in this light, the record presents, "no genuine issue as to any material fact [such] that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). To determine whether a genuine issue exists in a Title VII case, "we must consider both the substantive law of employment discrimination and the burden of proof under the applicable law." *Mechnig v. Sears, Roebuck and Co.*, 864 F.2d 1359, 1363–64 (7th Cir.1988). Applying this standard to Reed's case, we find that summary judgment is appropriate al-

---

**1.** Mr. Reed has apparently abandoned his First Amendment claim on appeal because he did not raise it in his brief before this court.

though we affirm on grounds other than those relied on by the district court.

### 1. The Basis of the Grant of Summary Judgment is Erroneous.

██ The district court entered summary judgment on Reed's Title VII claims after finding that he had lied on his employment application. The court based its decision on *Summers v. State Farm Mut. Auto. Ins. Co.*, 864 F.2d 700 (10th Cir.1988), a case holding that an employer need not reinstate an employee if, absent the discriminatory firing, the employee would have been fired for violating company rules. We find *Summers* distinguishable from Reed's case.

In 1976, Reed was convicted of armed robbery. Two years after the conviction, Reed denied being convicted of a felony on a job application submitted to AMAX. The job application specifically stated that such falsifications were grounds for dismissal.

AMAX first discovered the falsified application during Reed's hearing before the IHRC. Because it discovered the misrepresentations after Reed's termination, AMAX could not use them as a justification for firing him; instead, it moved for summary judgment on the theory that the falsifications barred any potential relief under Title VII. The court agreed and granted summary judgment.

A court may grant summary judgment if it determines that the plaintiff is not entitled to his requested relief. *See id.* In *Summers*, for example, the plaintiff claimed that his former employer terminated him because of his age and religion. *Id.* at 702. After the suit was filed, the employer learned that the employee had forged one-hundred and fifty company documents. *Id.* at 704. The employer presented evidence showing that it could have fired the employee for the falsifications alone and that it would have done so. *Id.* at 708. Based on this evidence, the

appellate court affirmed summary judgment, finding that the plaintiff was not entitled to a remedy because he would have been fired for the falsifications, if not for his age. *Id.* at 709.

The *Summers* case is not as broad as AMAX would have us believe. *Summers* and analogous cases require proof that the employer would have fired the employee, not simply that it could have fired him. *See Mount Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 285, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (requires proof that an employer would have fired an employee for constitutional reasons where an employee also fired for unconstitutional reasons); *Summers*, 864 F.2d at 705; *see also Smith v. General Scanning, Inc.*, 876 F.2d 1315, 1319 (7th Cir.1989) (applicant not entitled to back pay and reinstatement where he never met the minimum educational requirements for his job). We must require similar proof to prevent employers from avoiding Title VII liability by pointing to minor rule violations which may technically subject the employee to dismissal but would not, in fact, result in discharge.

Unlike the employer in *Summers*, AMAX never proved that it would have fired Reed for lying on his application; it only proved that it could have done so. AMAX did not, for instance, provide proof that other employees were fired in similar circumstances. (Document No. 79 and attachments). We, therefore, may not affirm for the reasons given by the district court.[2]

### 2. Summary Judgment is Appropriate Based on Reed's Failure to Prove Discrimination.

Although we cannot affirm the district court's decision based on *Summers*, this court may affirm on any ground that finds support in the record. *See Box v. A. & P. Tea Co.*, 772 F.2d 1372, 1376 (7th Cir.1985), *cert. denied*, 478 U.S. 1010, 106 S.Ct. 3311, 92 L.Ed.2d 724 (1986). Ironically, Reed's

**2.** On February 13, 1992, AMAX filed a citation of supplemental authority, *see* Fed.R.App.P. 28(j), which addresses the *Summers* issue. On February 28, 1992, Reed submitted his "2nd Motion to Supplement Brief/Reply Brief,"

which we have interpreted as a response to the Rule 28(j) submission. We have considered both AMAX's supplemental authority and the responsive portions of Reed's motion when deciding this issue.

motion for summary judgment provides a basis for granting summary judgment in AMAX's favor.

In his motion, Reed claimed that he could prove race discrimination under the burden shifting test of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *McDonnell Douglas* first requires the employee claiming discrimination to establish a prima facie case. *Id.* The burden then shifts to the employer to articulate legitimate nondiscriminatory reasons for the employee's treatment. *Id.* After this, the employee must show pretext. *Id.*

In an attempt to meet the requirements of *McDonnell Douglas*, Reed submitted affidavits and other evidentiary material. Because this evidence, along with the rest of the evidence in the record, reflects no genuine issue of material fact in Reed's favor, we find that AMAX is entitled to summary judgment. *See McCarty v. United States*, 929 F.2d 1085, 1088 (5th Cir. 1991) (a court may allow summary judgment *sua sponte* against a nonmovant who has had the opportunity to prove the facts in dispute); *Dayton Electric Mfg. Co. v. Apcom, Inc.*, 782 F.Supp. 389, 395 (N.D.Ill. 1992) (same); *see also Box*, 772 F.2d at 1376 (this court may affirm summary judgment on grounds other than the district court's grounds if the losing party had an opportunity to submit evidence).

### a. The Prima Facie Case

█ Reed failed to prove a prima facie case of race discrimination. To establish a prima facie case, a plaintiff must show that (1) he was a member of a protected class (2) who was qualified for his job (3) but was discharged while those in other classes were not. *Andre v. Bendix Corp.*, 841 F.2d 172, 175 (7th Cir.), *cert. denied*, 488 U.S. 855, 109 S.Ct. 144, 102 L.Ed.2d 116 (1988). If the plaintiff cannot meet one of the prongs of this test, summary judgment is properly entered in favor of the defendant. *Celotex Corp. v. Catrett*, 477 U.S.

317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Common v. Williams*, 859 F.2d 467, 469 (7th Cir.1988).

█ To survive summary judgment, a party may not rest on the allegations in the pleadings; a bare contention that an issue of fact exists is insufficient to raise a factual issue. *Billups v. Methodist Hosp. of Chicago*, 922 F.2d 1300, 1302 (7th Cir.1991). A plaintiff raises adequate issues of fact when he presents evidentiary material which, if reduced to admissible evidence, may allow him to carry his burden of proof. *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2554–55.

█ The materials attached to Reed's motion for summary judgment fail to address a critical element of the prima facie case, whether AMAX treated its white employees differently than Reed. Even an independent review of the voluminous record [3] produced only weak evidence on the issue. A few documents, including Reed's own affidavit (Document 88) and an Illinois Human Rights "Notice of Substantial Evidence," suggest a discrepancy but do not assert personal knowledge of the facts. *See* Fed.R.Civ.P. 56(e). Others, including Reed's amended complaint (Document 85) and the IHRC complaint, contain unsupported allegations without any documentation. *See Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir.1989), *cert. denied*, 493 U.S. 1023, 110 S.Ct. 725, 107 L.Ed.2d 745 (1990). To survive summary judgment, Reed should have provided the district court certified transcripts or affidavits from individuals with personal knowledge of the discrepancies.

### b. Pretext

█ Even if Reed had proven a prima facie case, he did not prove pretext. *See Billups*, 922 F.2d at 1302. An employer's proffered reasons for unequal treatment are pretextual if they are a "coverup for a racially discriminatory decision." *McDon-*

---

**3.** To decide on summary judgment, we only review the documents in the district court record. We cannot consider documents that were submitted to this court as exhibits and appendix materials but were not presented to the district court. *See* Fed.R.App.P. 30 (the appendix should only contain documents of record).

*nell Douglas,* 411 U.S. at 805, 93 S.Ct. at 1826. An honest explanation of the unequal treatment is not pretextual simply because it is poorly founded or unfair. *Pollard v. Rea Magnet Wire Co.,* 824 F.2d 557, 559 (7th Cir.1987).

▮ In Reed's case, the employer's proffered reason for the discrepancies was its "planned-inadvertent sleep policy." Under this policy, employees who intentionally sleep on the job are treated more harshly than employees who mistakenly fall asleep. Reed claimed that the policy was a pretext because "the defendant failed to notify the plaintiff and other employees of its alleged planned-inadvertent sleep policy."

Reed's claims about the sleep policy may establish unfairness, but not pretext. Reed presented absolutely no evidence proving that AMAX fabricated the policy to hide discrimination. *See United Ass'n of Black Landscapers v. Milwaukee,* 916 F.2d 1261, 1267 (7th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1317, 113 L.Ed.2d 250 (1991). Thus, although we cannot allow summary judgment for the reasons given by the district court, we nonetheless affirm because Reed's claims do not establish race discrimination.

B. The District Court Properly Entered Summary Judgment on Reed's § 1981 Claims.

▮ The district court found Reed's § 1981 claims precluded because he had pursued similar claims before the Department. His hearing before an Administrative Law Judge and the IHRC provided him an opportunity to litigate the relevant issues in front of an administrative body acting in a judicial capacity.

The Department investigated Reed's charge of race discrimination and issued a Complaint of Civil Rights Violation. At a subsequent hearing before an ALJ, Reed was represented by two attorneys who called fourteen witnesses including Reed. The attorneys also had an opportunity to cross-examine AMAX's witness and to introduce several exhibits. The hearing lasted two days and produced a 624–page transcript.

After the hearing, the ALJ issued a fifteen-page Recommended Order and Decision. The recommended order specifically included the finding that "respondent did not discharge complainant because of his race ..." (ALJ's Order at 3). Reed filed exceptions to the order with the IHRC, but the IHRC affirmed the ALJ. Reed failed to seek judicial review of the IHRC's decision as was his right under Ill.Rev.Stat. ch. 110, para. 3–101 *et seq.*

▮ This court may preclude a plaintiff from relitigating an issue under § 1981 if that issue was resolved in a state administrative proceeding. *Buckhalter v. Pepsi–Cola Gen. Bottlers, Inc.,* 820 F.2d 892, 897 (7th Cir.1987). We give collateral estoppel effect to judgments issued by an agency (1) acting in a judicial capacity, (2) resolving disputed issues of fact properly before it, (3) if parties have had an opportunity to litigate the issues. *University of Tennessee v. Elliott,* 478 U.S. 788, 799, 106 S.Ct. 3220, 3226–27, 92 L.Ed.2d 635 (1986). All of these requirements apply to Reed's case.

▮ An agency acts in a judicial capacity when it provides the following safeguards: (1) representation by counsel, (2) pretrial discovery, (3) the opportunity to present memoranda of law, (4) examinations and cross-examinations at the hearing, (5) the opportunity to introduce exhibits, (6) the chance to object to evidence at the hearing, and (7) final findings of fact and conclusions of law. *See Buckhalter,* 820 F.2d at 896 (also dealing with a proceeding before an ALJ and the IHRC). Because these procedural safeguards were provided in Reed's case, we find that the IHRC acted in a judicial capacity when it resolved Reed's claim.

Reed also had an opportunity to litigate the issues. Reed retained counsel and pursued administrative review. *See id.* at 896. He also had the right to judicial review although he chose not to appeal. *Id.; see also* Ill.Rev.Stat. ch. 110, para. 3–101 *et seq.* Finally, the IHRC resolved all issues of fact relevant to Reed's § 1981 claims

when it determined that Reed was not fired because of race. (ALJ's Opinion at 4).

Thus, because Reed's hearing meets the three requirements from *Elliott*, he may not relitigate his § 1981 claims in this court.

C. The District Court Did Not Abuse Its Discretion By Granting the Protective Order.

■ Reed also challenges a protective discovery order. The order allowed AMAX to avoid answering certain interrogatories, prevented Reed from using information from depositions conducted in violation of the court's discovery orders, and forbade him from conducting further discovery "without express written approval from the court."

The court's protective order was the last in a long line of discovery orders. The first of these orders allowed Reed one year to complete discovery. After the expiration of the first order, Reed requested and received two orders extending the time for discovery. In the second of these orders, the court explicitly stated that "[n]o further extensions will be allowed." Despite the court's order, Reed asked for and was granted another extension allowing him to send written interrogatories to third parties.

Instead of sending the interrogatories, Reed conducted oral depositions of several witnesses without notifying AMAX. He also sent AMAX three discovery requests, each containing over 200 questions. Thereafter, the district court granted the protective order at issue.

A district court has the authority to "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including ordering that "discovery may not be had." Fed.R.Civ.P. 26(c). Such decisions are generally within the discretion of the district court. *United States v. Balistrieri*, 606 F.2d 216, 221 (7th Cir.1979), *cert. denied*, 446 U.S. 917, 100 S.Ct. 1850, 64 L.Ed.2d 271 (1980).

■ In Reed's case, the district court did not abuse its discretion. The record shows that Reed was given ample opportunity to conduct discovery, but that he failed to do so properly. A district court acts well within its authority when it issues a protective order to prevent blatant violations of its earlier directives.

D. Other Arguments.

Reed argues that AMAX violated the collective bargaining agreement. He first discussed this claim in his amended complaint, which he filed on June 21, 1986, over four years after his termination and the subsequent arbitrator's decision. Because such a time lapse violates the statutes of limitations set out in similar cases, *DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 171, 103 S.Ct. 2281, 2294, 76 L.Ed.2d 476 (1983); *Stevens v. Gateway Transportation*, 696 F.2d 500, 505 (7th Cir. 1982), Reed has forfeited the right to pursue his claim.

■ Reed also challenges the denial of his "Supplemental Motion for Leave to Amend Complaint in the District Court," which was filed after final judgment and interpreted as a motion under Fed.R.Civ.P. 60(b). We lack jurisdiction to review this claim because Reed failed to file a notice of appeal within thirty days of the denial. This is true even though Reed has filed a notice of appeal from final judgment. This circuit requires a separate notice for the denial of a motion under Rule 60(b). *See Washington v. Board of Educ.*, 498 F.2d 11, 15 (7th Cir.1974).

III. CONCLUSION

We, therefore, DISMISS Reed's Rule 60(b) claims for lack of jurisdiction and AFFIRM the judgments of the district court in all other respects.