**Cliff REDDEN, Plaintiff,**

v.

**WAL–MART STORES, INC., et al., Defendants.**

**No. S92–102M.**

United States District Court, N.D. Indiana, South Bend Division.

June 10, 1993.

See also 806 F.Supp. 210.

Bonita A. Schaaf, Thomas Alevizos, Michigan City, IN, for plaintiff.

Frank A. Gumina, Charles W. Pautsch, Milwaukee, WI, for defendants.

## MEMORANDUM AND ORDER

MILLER, District Judge.

This cause comes before the court on the motions of defendants Wal–Mart Stores, Inc. and Wal–Mart Store Number 1487—Michigan City, Indiana (collectively referred to as "Wal–Mart") for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Wal–Mart contends that the plaintiff's misrepresentations on his resume and job application foreclose the claim of racial discrimination under Title VII. For the reasons that follow, the defendants' motions must be granted.

### I.

On March 15, 1990, plaintiff Cliff Redden sent a letter and resume to Wal–Mart's Arkansas home office requesting a job in Wal–Mart's store in Michigan City, Indiana. On May 21, 1990, Mr. Redden submitted an application for employment at Store 1487. The employment application incorporated the resume that Mr. Redden previously had sent the Wal–Mart home office. Wal–Mart hired Mr. Redden as a department manager on July 9, 1990, and terminated him less than seven months later, on February 7, 1991. Mr. Redden brought suit alleging that Wal–Mart subjected him to discriminatory terms and conditions of employment, and eventually discharged him, because of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Wal–Mart has moved for summary judgment.

### II.

Wal–Mart contends that Mr. Redden is not entitled to any relief because he made false statements and misrepresentations in his March 15 letter, in his resume, and in his employment application. Wal–Mart maintains that upon discovery of such false statements and misrepresentations, Wal–Mart would have dismissed Mr. Redden immediately. Mr. Redden argues that there are genuine fact issues as to whether he made false statements and misrepresentations in his resume and employment application, whether Wal–Mart would have terminated him upon discovery of the alleged false statements and misrepresentations, and whether his termination was racially motivated.

The Seventh Circuit has addressed the issue of resume or application fraud three times in the past year. In the first case, Washington v. Lake County, Ill., 969 F.2d 250 (7th Cir.1992), the plaintiff alleged that the defendants fired him from his position as a jailer in violation of Title VII. The defendants contended that they dismissed the plaintiff because he had brought discredit to the sheriff's department due to his recent arrest for criminal sexual assault. At the time of the plaintiff's termination, the defendants were unaware that the plaintiff had lied on his job application about his prior convictions. The district court granted the defendants' summary judgment motion, holding that even if the plaintiff was terminated because of his race, he was not entitled to relief because he had lied on his employment application. Washington v. Lake County, Ill., 762 F.Supp. 199 (N.D.Ill.1991), aff'd, 969 F.2d 250 (7th Cir.1992).

On appeal, the plaintiff argued that there was a question of fact as to whether he would have been hired, or would have been fired, had the defendants known of his prior convictions. The Seventh Circuit stated:

[T]he appropriate issue in an employment discrimination case where the plaintiff lied

on his application and was later fired for an unrelated reason is whether the employer, acting in a race-neutral fashion, would have fired the employee upon discovery of the misrepresentation, not whether the employer would have hired the employee had it known the truth.

*Washington v. Lake County, Ill.,* 969 F.2d at 256.

Applying that standard, the court held that the defendants, acting in a race-neutral fashion, would have fired the plaintiff had they discovered the falsehoods on his employment application. 969 F.2d at 256. The defendants submitted two uncontradicted affidavits stating that the plaintiff's convictions, "if known at the time of [the plaintiff's] employment, would have led to his immediate discharge". 969 F.2d at 256. The plaintiff argued that there was no evidence that the defendants had a policy of terminating employees who had lied on their applications. The court stated that in light of the uncontradicted affidavits, the burden shifted to the plaintiff to produce evidence that he would not have been fired if treated in a race-neutral fashion. "It was thus [the plaintiff's] burden to show that an employee would not have been fired in a 'resume fraud' situation, and he has produced no such evidence." 969 F.2d at 257.

In *Reed v. Amax Coal Co.,* 971 F.2d 1295 (7th Cir.1992), the employer discharged the plaintiff after allegedly finding him sleeping on job. Believing that his termination was racially motivated, the plaintiff filed suit under Title VII. The district court granted summary judgment for the employer after finding that the plaintiff had lied on his employment application. The application said the plaintiff had not been convicted of a felony, but he had been convicted of armed robbery.

The Seventh Circuit held that the basis upon which the district court granted summary judgment was erroneous. 971 F.2d at 1298. The court of appeals stated that for the employer to prevail, it must prove that after learning of the false application it would

have, not simply that it could have, fired the employee.

> AMAX never proved that it would have fired [the plaintiff] for lying on his application; it only proved that it could have done so. AMAX did not, for instance, provide proof that other employees were fired in similar circumstances.... We, therefore, may not affirm for the reasons given by the district court.[1]

971 F.2d at 1298.

Finally, in *Kristufek v. Hussmann Foodservice Co.,* 985 F.2d 364 (7th Cir.1993), two plaintiffs filed a three-count complaint against the defendant for age discrimination. In Count 2, plaintiff Arthur Kristufek alleged that he was terminated in retaliation for his efforts in opposing the discharge of the other plaintiff. The jury found for Mr. Kristufek, and awarded damages totalling $222,296.00. Mr. Kristufek, however, had falsified his educational qualifications that he submitted at the time he was hired. Based upon that conduct, the district court granted the defendant's motion for judgment notwithstanding the verdict, barring Mr. Kristufek from any recovery.

The court of appeals reversed. Again, the court noted that the defendant employer had not proven that it would have fired Mr. Kristufek upon notice of his false application, only that it could have:

> [The defendant] appears to have had a company policy that employees were subject to discharge for misrepresenting their job qualifications, but not that such employees would in fact have been fired. The principal evidence of the company policy appears on the employment application form which warns that 'any material misstatement or omissions of material facts ... may be cause for immediate dismissal.' 'May be' is not 'will be' and is not enough to avoid the proven charge of retaliatory firing.

985 F.2d at 369. The court continued: "[W]ithout adequate showing that Kristufek would have been fired, not just that he might

---

1. The Seventh Circuit affirmed the district court's grant of summary judgment, but for different reasons. 971 F.2d at 1300.

have been," it was error to set aside the jury verdict. 985 F.2d at 370.

■ After *Washington, Reed,* and *Kristufek,* the law in the Seventh Circuit appears to be that in an employment discrimination case where the employee lies on his employment application or resume and later is fired for an unrelated reason, the court must determine whether the employer, acting in a race-neutral fashion, would have fired the employee upon discovery of the misrepresentation, and not merely that the employer could have fired the employee. In this case, the pertinent questions are: (1) whether Wal–Mart had a policy under which it would have fired Mr. Redden had it known of the alleged falsifications; (2) if so, whether Wal–Mart's policy was race-neutral; and (3) if so, whether Mr. Redden falsified his application.

■ Because the "resume fraud" defense allows an employer to prevail regardless of the truth of allegations of racial discrimination, the court assumes it to be an affirmative defense on which the employer would bear the burden at trial.

A party seeking summary judgment must demonstrate that no genuine issue of fact exists for trial and that the movant is entitled to judgment as a matter of law.... A genuine factual issue exists only when there is sufficient evidence for a jury to return a verdict for the motion's opponent. Summary judgment should be granted if no reasonable jury could return a verdict for the motion's opponent.

The parties cannot rest on mere allegations in the pleadings, or upon conclusory allegations in affidavits. The court must construe the facts as favorably to the non-moving party as the record will permit, and draw any permissible inferences from the materials before it in favor of the non-moving party, as long as the inferences are reasonable. The non-moving party must show that the disputed fact is material, or outcome-determinative, under applicable law.

*Conery v. Bath Associates,* 803 F.Supp. 1388, 1392–93 (N.D.Ind.1992) (citations omitted).

## A.

■ Wal–Mart maintains that it would have immediately terminated Mr. Redden had it discovered the misrepresentations in his resume and employment application. Directly above Mr. Redden's signature on Wal–Mart's employment application is the following language:

I certify that the information contained in this application is correct to the best of my knowledge, and understand that falsification or omissions in this application in any detail is grounds ... for dismissal from employment at the time the company discovers the omission or falsification.

Wal–Mart has submitted several affidavits establishing that during Mr. Redden's term of employment, and through the present, Wal–Mart has had a policy of immediate termination for any employee who falsifies his or her employment application or resume. Moreover, Wal–Mart claims to have terminated the following employees at Wal–Mart Store 1487 for falsifying their employment applications and/or resumes during the time Mr. Redden was an employee:

| Name | Date | Reason for Termination |
|---|---|---|
| Connie Vaughn | 9/19/90 | omitting criminal conviction |
| Gina Thomas | 8/13/90 | omitting past employers |
| Anna Stevens | 9/28/90 | omitting criminal conviction |
| Cheryl Smith | 9/07/90 | omitting criminal conviction |
| Chrysanthia Davis | 9/27/90 | omitting criminal conviction |
| Wayne Thorpe | 10/01/90 | omitting criminal conviction |
| Cosie Daniel III | 8/23/90 | omitting past employers |
| Tricia Wright | 9/19/90 | omitting criminal conviction |
| Tiffany Smith | 9/19/90 | omitting criminal conviction |

According to Wal–Mart, Mr. Redden similarly would have been discharged immediately if it was learned during his employment that he had falsified his employment application and/or resume.

Mr. Redden contends that there is a factual dispute as to whether Wal–Mart would have discharged him for falsifying his employment application and resume. He makes the conclusory allegation that not all Wal–Mart employees have been discharged upon discovery that they falsified their employment application or resume, and claims that "for many of the black employees who were discharged for application falsehoods, it was merely a pretext for discriminatory discharge." Mr. Redden, however, has presented no evidence of any Wal–Mart employee who was not terminated after Wal–Mart discovered that the employee had falsified his or her employment application or resume. Likewise, Mr. Redden has presented no evidence that Wal–Mart's discharge of other employees for application falsehoods was pretextual. Conclusory allegations without any factual support are insufficient to create a genuine issue of fact. *Cusson–Cobb v. O'Lessker,* 953 F.2d 1079, 1081 (7th Cir.1992); *Conery v. Bath Associates,* 803 F.Supp. at 1393.

Mr. Redden contends that Brent Keller's affidavit fails to indicate that "all" employees who falsified their employment applications were discharged after the falsehoods were discovered. Mr. Redden also contends that Lester Nail's affidavit should be stricken because Mr. Nail was not Wal–Mart's corporate counsel at the time Mr. Redden was an employee. Mr. Redden argues that James Kaiser's affidavit, which lists nine employees at Wal–Mart Store 1487 who were terminated for employment application falsehoods, is deficient because one (or perhaps as many as three [2]) of the employees listed was terminated for another reason.

Assuming that Mr. Nail's affidavit should be stricken, the two remaining affidavits state that Wal–Mart "had, and still has, an employment policy of immediate termination of employees who falsify their employment applications and/or resumes." In addition, the affidavits provide that Mr. Redden "would have been immediately discharged if it was learned during his employment with Wal–Mart Stores, Inc. that he falsified his employment application and/or resume." The affidavits' failure to refer to "all" employees is not fatal, as there is no evidence that Wal–Mart did not terminate all employees who falsified their employment applications or resumes.

More importantly, the issue is whether Wal–Mart, acting in a race-neutral fashion, would have fired Mr. Redden upon discovery of his misrepresentations. The affidavits affirm that Wal–Mart would have terminated Mr. Redden like the other Wal–Mart employees who were terminated during Mr. Redden's seven-month tenure. Mr. Redden has produced no evidence to the contrary.

Mr. Redden contends that James Kaiser's [3] affidavit, which lists employees terminated for employment application falsehoods, is deficient because at least one of the employees listed was terminated for another reason. Mr. Redden contends that Patricia Wright was terminated for shoplifting, not falsifying her employment application. That there may be a question of fact as to the reason for dismissal of one of the nine employees listed does not invalidate Mr. Kaiser's entire affidavit. Without contradiction in this record, the other employees were terminated for falsifying the applications or resumes.

Mr. Redden claims that the language on the application, which warned that providing false information may be grounds for dismissal, does not prove that Wal–Mart would have dismissed Mr. Redden upon discovery of his misrepresentations. The warning in the employment application does not provide that misrepresentations "may be" grounds

---

**2.** Mr. Redden's counsel stated at the summary judgment hearing that subsequent discovery has revealed two more of the nine discharged employees listed in the Kaiser affidavit actually were dismissed for reasons other than resume fraud. That evidence, however, is not in the record before the court.

**3.** Mr. Kaiser was the store manager of Wal–Mart Store 1487 from May 1990 to December 1990.

for dismissal, it provides that falsification and omission in any detail "is" grounds for dismissal. Mr. Redden is correct that the application says that a misrepresentation "is grounds for" rather than "will result in", but the language used in the application is not dispositive. *See Washington v. Lake County, Ill.,* 969 F.2d at 257 n. 1 ("Proving 'that the same decision would have been justified is not the same as proving that the same decision would have been made.' "). Wal–Mart has proven, without contradiction, that the decision to terminate Mr. Redden would have been made if the falsehoods in his employment application and resume had been discovered.

Uncontradicted evidence establishes that Wal–Mart maintained a firm policy of dismissal upon discovery that an employee falsified his or her application or resume. Although the number of the policy's casualties may be in dispute, the number of people actually discharged for resume fraud is not material, and only material fact issues preclude summary judgment. Mr. Redden has come forth with nothing to contravene the affidavit evidence that Wal–Mart dismissed all employees who were found to have made misrepresentations on their applications or resumes.

## B.

■ The "resume fraud" necessarily requires the defendant to show that the employee's inevitable dismissal would have been race-neutral; it is no defense to a race discrimination claim to contend that the plaintiff was dismissed because of his fraud and his race. Mr. Redden raises two arguments in support of his contention that Wal–Mart's policy of discharge for falsification on applications was not race-neutral.

■ First, he contends that Wal–Mart's policy is not race-neutral in theory, because Wal–Mart has not shown that it investigates the truth of statements made on applications and resumes. It might be inferred that other instances of resume fraud came to Wal–Mart's attention only if, as here, an employee made a claim of racially discriminatory employment practices. Mr. Redden argues that a policy that only results in dismissal of persons who complain of racial discrimination cannot be race-neutral, and hence cannot satisfy the requirements of *Washington v. Lake County, Ill.,* 969 F.2d 250. According to Mr. Redden, only a policy that entails regular investigation to verify statements on applications, and hence uncovers misstatements by persons who have not claimed racial discrimination, could qualify under *Washington.*

*Washington* itself defeats this argument; the police department that discharged Mr. Washington had no policy of verification of applications. Mr. Washington's dismissal for falsification would have been the first such dismissal in memory. The inquiry, however, was whether Mr. Washington would have been dismissed had he been found out, regardless of his race.

Similarly, Wal–Mart's policy is, on its face, race-neutral. Those who are found to have falsified their applications are dismissed, regardless of their race, and without regard to the manner in which the falsification was discovered. An employer's policy to dismiss those who falsified their applications and also made claims of employment discrimination would require a different analysis, but that is not this case. The court can neither find nor imagine any authority for a rule that an employer's policy that its employees must tell it the truth is unenforceable unless the employer conducts routine investigations, even if the employer learns of falsehoods.

Second, Mr. Redden contends that the Wal–Mart policy may have been administered unevenly because it is applied unduly against black employees. *Washington* lends support to the significance of such an argument, but it is an argument made without evidentiary support. Mr. Redden's supplemental submission includes notes of an interview with Danica Longstreth, the assistant manager of the store where Mr. Redden worked, who stated that she could not recall of any whites being dismissed pursuant to the resume fraud policy. Wal–Mart's submissions, however, address a company-wide policy, not simply a policy at the Michigan City store. The Longstreth interview notes do not disclose any knowledge of the racial impact of the company-wide policy, and do

not even set forth the number of black Michigan City employees who were dismissed pursuant to the policy. Without considerably more information, the court cannot view the Michigan City store history as providing a statistically significant sampling to allow inference of any disparate impact of a racially neutral policy.

Wal–Mart has demonstrated the absence of any genuine fact as to the existence of race-neutral policy that would have led to Mr. Redden's immediate dismissal if Wal–Mart had discovered that he falsified his application or resume. It remains to determine whether a genuine issue exists concerning Wal–Mart's remaining contentions that Mr. Redden falsified his application and his resume.

### C.

Wal–Mart contends that Mr. Redden misrepresented the following items in his resume or employment application: (1) his military background, (2) his education, (3) his prior criminal history, and (4) his previous work experience. Each item will be addressed in turn.

### 1.

In his resume, Mr. Redden indicated that he was in the United States Marine Corps for four years, and achieved the rank of Lieutenant, Special Tactics. At his deposition, however, Mr. Redden testified that he was in the Marine Corps for only two years. Redden Dep., p. 50. Wal–Mart contends that Mr. Redden never obtained the rank of lieutenant or any other officer status, but achieved the rank of E–2 (Private First Class). Mr. Redden argues that he received the rank of E–3 (Lance Corporal) before his discharge, but the paperwork had not yet been completed.

Regardless of whether Mr. Redden achieved the rank of E–2 or E–3, there is no dispute that he was not a lieutenant or officer in the Marine Corps. Moreover, there is no dispute that Mr. Redden was in the Marines for two years, not four, and was never in Special Tactics.

### 2.

In his March 15, 1990 letter sent to Wal–Mart's home office, Mr. Redden indicated that "I have received business training from courses taken at Purdue University. My course of study included Supervision training also." On his resume, Mr. Redden indicated that he had two years of education at Purdue University, West Lafayette, Indiana, and that he had completed forty-two credit hours in General Business/Marketing.

Wal–Mart later discovered that Mr. Redden never attended Purdue University in West Lafayette; rather, he attended Purdue North Central located in Westville, Indiana, where he enrolled in one class, from which he subsequently withdrew. He received no credits at Purdue North Central or Purdue University or any other post-secondary educational institution.

Regarding his March 15 letter, Mr. Redden explains that he did not intend "that Wal–Mart should think that he was referring to Purdue University courses", which is why he used two sentences. Mr. Redden also states that he listed the West Lafayette address for Purdue University because that was the address from which transcripts could be obtained. Mr. Redden's subjective intent does not detract from the undisputed fact that the representations in his resume and employment application were objectively false. *See Washington v. Lake County, Ill.,* 762 F.Supp. at 202.

There is no dispute that Mr. Redden indicated in his resume and in the March 15 letter that he had received business training or taken courses at Purdue University in West Lafayette, when he actually attended Purdue North Central in Westville. More importantly, there is no dispute that Mr. Redden indicated in his resume that he completed forty-two credit hours at Purdue University, when he had completed none. Moreover, there is no dispute that in his March 15 letter, Mr. Redden indicated that he took "courses" from Purdue University, when he registered for only one course and later withdrew from that one class.

### 3.

Wal–Mart's employment application contains the question: "Have you ever been convicted of a crime involving dishonesty, breach of trust, violence, or one related to your future work here?" Mr. Redden answered, "No." Mr. Redden apparently was convicted of what he calls "criminal conversion". Redden Dep., p. 405. He does not recall the exact crime, but he stated that some third person "tried to claim that we [Mr. Redden and another person] stole the trailer, that the other guy stole the trailer and that I knew about it." Mr. Redden served some jail time for his crime.

Mr. Redden claimed that he answered "no" to Wal–Mart's question because he believed that the question referred only to felony convictions, not misdemeanors. He also claims that he was never convicted of theft. The question itself, however, is not limited to felonies or to crimes of theft; the question merely asks for convictions of dishonesty, breach of trust, or violence. The crime of criminal conversion appears to be a crime of dishonesty which should have been affirmatively represented by Mr. Redden in his employment application. However, in light of the other undisputed misrepresentations and falsehoods, the court need not decide as a matter of law whether Mr. Redden's failure to include his prior conviction for criminal conversion was a misrepresentation.

### 4.

■ Regarding his past employment history, Mr. Redden failed to indicate in his resume, and in his employment application, that he worked for a company named Corning in 1987. Mr. Redden's response is that he has reason to believe that both his resume and application may have been altered after Wal–Mart received them.[4] However, Mr. Redden provides no evidentiary foundation supporting his belief, and his conclusory allegations do not raise a genuine issue of material fact. *Cusson–Cobb v. O'Lessker,* 953 F.2d at 1081; *Conery v. Bath Associates,* 803 F.Supp. at 1393. The court has reviewed the deposition transcript in which Mr. Redden claims to have explained the basis for his conclusion, but can find nothing more than additional conclusions.

Mr. Redden indicated in his resume and employment application that he was previously the manager of Hanover Shoes. In his deposition, he stated that he was the assistant manager. Redden Dep., p. 100. Mr. Redden maintains that the employees' titles at Hanover Shoes differed from most businesses, and that he was the highest level of management within the store in which he worked.

The undisputed facts establish that Mr. Redden failed to indicate that he worked for Corning in 1987, and that he represented that he was the manager of Hanover Shoes, although he was only the assistant manager.

■ Mr. Redden maintains that he should not be held responsible for the inaccuracies in his resume because he did not prepare the resume at issue, but rather paid someone to prepare it for him. However, Mr. Redden reviewed his resume before he sent it to Wal–Mart's home office. In addition, Mr. Redden incorporated the resume he sent to the home office in March 1990 into the employment application he submitted to Wal–Mart in May 1990; this two-month interval allowed Mr. Redden sufficient time to review his resume and correct any inaccuracies. That Mr. Redden did not thoroughly proofread his resume does not mean that he is not held accountable for the misrepresentations in his resume. *See, e.g., Heller Financial, Inc. v. Midwhey Powder Co., Inc.,* 883 F.2d 1286, 1292 (7th Cir.1989) (failure to read a contract, by itself, will not relieve a party from the terms of the contract).

The undisputed facts establish that Mr. Redden misrepresented his military history, his educational background, and his employment history in his resume and employment application. Accordingly, Wal–Mart has established that, had those falsifications been known, Mr. Redden would have been dis-

---

**4.** Mr. Redden did not object to the authenticity or admissibility of any documents attached to Wal–Mart's motion for summary judgment, or move to strike the any of the documents. There-

fore, Mr. Redden has waived any such objection. *See, e.g., Allen v. Scribner,* 812 F.2d 426, 435 n. 18 (9th Cir.1987).

missed pursuant to a race-neutral policy. Wal–Mart is entitled to summary judgment on Mr. Redden's claim that his dismissal was racially motivated.

### III.

Mr. Redden's final argument is that even assuming that he made the misrepresentations and that Wal–Mart would have terminated him, the "racially discriminatory terms and conditions began immediately after the plaintiff was hired, and this claim would survive the motion for summary judgment." Mr. Redden's relief under Title VII of the Civil Rights Act of 1964 is limited to reinstatement, back pay, or any other equitable relief. *Beasley v. Health Care Service Corp.,* 940 F.2d 1085, 1089 (7th Cir.1991). A district court cannot award damages, either compensatory or punitive, to remedy a Title VII violation. *Trautvetter v. Quick,* 916 F.2d 1140, 1147–48 (7th Cir.1990); *King v. Board of Regents of Univ. of Wis. System,* 898 F.2d 533, 537 (7th Cir.1990). "Since damages are not equitable relief, most courts have held that damages are not available to redress violations of Title VII that do not result in discharge." *Beasley v. Health Care Service Corp.,* 940 F.2d at 1089 (citing *Bohen v. City of East Chicago,* 799 F.2d 1180, 1184 (7th Cir.1986)). The court agrees with Wal–Mart that because Mr. Redden cannot recover any relief for any of the discrimination alleged in his complaint, summary judgment is proper.

Mr. Redden notes that Wal–Mart's submission speaks of a policy of dismissal, not of a policy that those whose resume fraud is detected before hiring would not be hired. While the court must draw all reasonable inferences in favor of the non-movant, the court need not so draw implausible inferences. *Donohoe v. Consolidated Operating & Production Corp.,* 982 F.2d 1130, 1137 (7th Cir.1992). No reasonable trier of fact could find that a company with a firm policy of dismissal for resume fraud would knowingly hire an employee only to discharge him.

### IV.

There is no question of material fact, but that Mr. Redden falsified his employment application and resume, and that Wal–Mart immediately would have terminated Mr. Redden on race-neutral grounds if it had discovered the misrepresentations. Accordingly, the defendants' motion for summary judgment must be, and is hereby, GRANTED.

SO ORDERED.