Theresa M. DUELLO, Plaintiff-Appellant,

v.

BOARD OF REGENTS OF the UNIVERSITY OF WISCONSIN. SYSTEM, Defendant-Respondent.†

Court of Appeals

*No. 91–1047. Submitted on briefs September 6, 1991.—Decided June 25, 1992.*

(Also reported in 487 N.W.2d 56.)

†Petition to review granted.

27

For the plaintiff-appellant the cause was submitted on the briefs of *Lester A. Pines* of *Cullen, Weston, Pines & Bach* of Madison.

For the defendant-respondent the cause was submitted on the briefs of *James E. Doyle,* attorney general and *John J. Glinski,* assistant attorney general.

Before Eich, C.J., Dykman and Sundby, JJ.

SUNDBY, J.   In this appeal, we decide that Theresa Duello's appeal to the University of Wisconsin-Madison's Committee on Faculty Rights and Responsibilities (CFRR) of the Department of Anatomy's nonretention decision, allegedly because of her sex, was a "proceeding" under Title VII of the Civil Rights Act of 1964 [42 U.S.C. §§ 2000e *et seq.*].[1] We therefore conclude that,

---

[1] 42 U.S.C. § 2000e-2(a) provides:

It shall be an unlawful employment practice for an employer—

under § 706(k) of the Act [42 U.S.C. § 2000e–5(k)],[2] the circuit court could have allowed Duello a reasonable attorney's fee as part of her appeal costs. We reverse the circuit court's order granting the Board of Regents' motion for summary judgment dismissing Duello's action.

## BACKGROUND[3]

Duello was employed in 1982 by the University of Wisconsin system under a three-year contract as an assistant professor in the U.W.-Madison Medical School's Department of Anatomy. She received two one-year extensions but was nonrenewed by the department July 1, 1986, prior to the year when she would have been considered for tenure.

On August 5, 1986, Duello, apparently acting *pro se,* filed a complaint with the U.W.-Madison's Office of Affirmative Action and Compliance (AAO) alleging that by failing to renew her contract, the department had discriminated against her because of her sex. Sometime in January 1987, Duello hired counsel. On January 16,

---

(1)  to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. . . .

[2]Section 706(k) [42 U.S.C. § 2000e–5(k)] provides:

In any action or proceeding under this Title [42 U.S.C. §§ 2000e et seq.] the court, in its discretion, may allow the prevailing party, other than the [Equal Employment Opportunity] Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs. . . .

[3]The facts stated herein are derived from the circuit court's Decision and Order, the record, the parties' briefs, and Duello's appendix and are not disputed.

1987, the AAO reported that the department had subjected Duello to an "offensive and hostile environment."

Prior to disclosing its report to Duello, the AAO informed her that she could have a full-time equivalent position in any other department if she would forego her right to the report. Duello refused. Two weeks after the AAO issued its report, the Acting Vice Chancellor informed Duello that he would help move her to another department if she would agree that such transfer resolved her discrimination complaint. Duello refused the offer.

After receiving the AAO's report, Duello asked the department to reconsider its decision not to renew her contract. On February 11, 1987, the department informed Duello that it would not reconsider its decision. On April 13, 1987, Duello appealed to the CFRR pursuant to Wis. Adm. Code sec. UWS 3.08 to determine whether the department based its decision not to renew her contract on factors proscribed by federal and state nondiscrimination laws.

On April 24, 1987, Duello filed a complaint with the Equal Rights Division of the Department of Industry, Labor and Human Relations (DILHR) and the federal Equal Employment Opportunities Commission (EEOC) alleging that the department in its nonrenewal decision discriminated against her on account of her sex and retaliated against her. The Equal Rights Division referred her complaint to the state Personnel Commission pursuant to sec. 111.375(2), Stats.[4] The commission

---

[4]Section 111.375(2), Stats., provides:

> This subchapter applies to each agency of the state except that complaints of discrimination or unfair honesty testing against the agency as an employer shall be filed with and processed by the personnel commission under s. 230.45(1)(b). Decisions of the personnel commission are subject to review under ch. 227.

"placed on hold" Duello's complaint, pending the outcome of her appeal to the CFRR.

The CFRR issued its final report on Duello's appeal on October 27, 1988. It summarized its conclusions as follows:

> We have concluded that the challenged nonretention decision did not violate any standard formal norms of procedure or due process, and we have discovered no evidence that it resulted from sexual discrimination. Nevertheless, it failed to meet the standards of fairness that the University of Wisconsin is committed to uphold. CFRR has found no actionable or malicious misconduct on the part of any faculty member or administrator, but there is nonetheless plenty of culpability to be shared. Lack of colleague sympathy and assistance, unfortunate and insensitive statements susceptible to misinterpretation, an investigation by AAO which distressed and angered the Anatomy Department Executive Committee and Dr. Duello, and apparently insufficient oversight by the Medical School Administration, conjoined with a tense and unfriendly work environment, prevented a fair evaluation of Dr. Duello's accomplishments and likely future performance. Her own heightened sensitivity did nothing to ameliorate these conditions, and probably only exacerbated them. Under the circumstances, CFRR believes that Dr. Duello is entitled to another chance to be judged on her merits as a scholar, the same opportunity to succeed that is routinely extended to all assistant professors. (Footnote omitted.)

The CFRR recommended that Duello be offered a new contract and suggested other changes in her status that would give her the opportunity to gain tenure. It also recommended that the university reimburse Duello for one-half of her legal expenses.

31

On February 10, 1989, the Chancellor adopted most of the CFRR's recommendations but reserved her decision as to payment of any of Duello's legal expenses. On July 10, 1989, the Chancellor advised Duello that there was no "legal or policy basis" to pay any part of her attorney's fees.

As a result of negotiations between Duello and the U.W.-Madison Medical School from June 23, 1989, to July 27, 1989, Duello received a full-time probationary faculty appointment as assistant professor in the Department of Obstetrics and Gynecology.

On October 9, 1989, the university requested that the Personnel Commission dismiss Duello's complaint since the only issue reserved by Duello in the settlement was the payment of her attorney fees and the commission did not have jurisdiction to pay legal fees for the university's "internal review process." On November 13, 1989, Duello refused to withdraw her complaint and asked that the Personnel Commission determine her entitlement to attorney's fees. In a Decision and Order filed March 9, 1990, the Personnel Commission dismissed Duello's complaint as moot.[5]

On August 2, 1990, Duello received her right-to-sue letter from the EEOC[6] and began this action October 22, 1990, under Title VII for a judgment determining that

_____

[5]Duello did not seek review of the commission's decision. Her action is based on her right-to-sue letter. In *New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 66 (1980), the Court decided that § 706(f)(1) of the Civil Rights Act of 1964 authorizes a suit solely to recover attorney fees.

[6]The right-to-sue letter is not in the record. However, the board does not dispute Duello's assertion that the right-to-sue letter came from the EEOC. Section 706(f) [42 U.S.C. § 2000e–5(f)] provides for notice of the right to sue by the United States Attorney General in a case involving a governmental

the department discriminated against her on the basis of her sex with regard to her contract extension. She sought a reasonable attorney's fee for legal services in this action, and in the proceedings before the Personnel Commission and the CFRR.

The circuit court granted the board's motion for summary judgment dismissing Duello's action "[b]ecause I find that the CFRR proceedings were an optional review process and not mandated by Title VII. . . ."

## THE ISSUE

Duello states the issue on appeal as follows:

> May a plaintiff be awarded attorneys fees under Title VII of the Civil Rights Act of 1964 for prevailing in an administrative proceeding which is considered "collateral" rather than "mandatory" under Title VII's provisions?

Stated with particularity as to this appeal, the issue is:

> Was Duello's appeal to the CFRR under Wis. Adm. Code sec. UWS 3.08[7] and sec. 7.10 of the U.W.-

agency. Whether the right-to-sue letter came from the EEOC or the Attorney General does not affect our decision.

[7]Wisconsin Adm. Code sec. UWS 3.08 provides in part:

(1)   The faculty and chancellor of each institution, after consultation with appropriate students, shall establish rules and procedures for the appeal of a nonrenewal decision. Such rules and procedures shall provide for the review of a nonrenewal decision by an appropriate standing faculty committee upon written appeal by the faculty member concerned. . . . The burden of proof in such an appeal shall be on the faculty member, and the scope of the review shall be limited to the question of whether the decision was based in any significant degree upon one or more of the following factors, with material prejudice to the individual:

(a)   Conduct, expressions, or beliefs which are constitutionally protected, or protected by the principles of academic freedom, or

(b) Factors proscribed by applicable state or federal law regarding fair employment practices . . ..

. . ..

(2) The appeals committee shall report on the validity of the appeal to the body or official making the nonrenewal decision and to the appropriate dean and the chancellor.

(3) Such a report may include remedies which may, without limitation because of enumeration, take the form of a reconsideration by the decision maker, a reconsideration by the decision maker under instructions from the committee, or a recommendation to the next higher appointing level. Cases shall be remanded for reconsideration by the decision maker in all instances unless the appeals committee specifically finds that such a remand would serve no useful purpose. The appeals committee shall retain jurisdiction during the pendency of any reconsideration. The decision of the chancellor will be final on such matters.

[8]Pursuant to the direction of Wis. Adm. Code sec. UWS 3.08, the faculty and Chancellor of the U.W.-Madison adopted sec. 7.10 of the U.W.-Madison Faculty Policies and Procedures which provides:

A. By written request, within twenty days, the faculty member may appeal an adverse reconsideration of a nonrenewal decision in accordance with the provisions of UWS 3.08(1). The appeal shall be heard by the Committee on Faculty Rights and Responsibilities no later than twenty days after the request, except that this time limit may be enlarged by mutual consent of the parties, or by order of the committee. The faculty member shall be given at least ten days notice of such review.

B. The Committee on Faculty Rights and Responsibilities shall report on the validity of the appeal to the faculty member, the departmental executive committee, the appropriate dean, and the chancellor, in accordance with the provisions of UWS 3.08(3).

C. The Committee on Faculty Rights and Responsibilities shall retain jurisdiction pending the resolution of the appeal.

Hereafter, reference to sec. UWS 3.08 includes sec. 7.10 of the Faculty Policies and Procedures.

1964 for which the circuit court could allow Duello a reasonable attorney's fee under § 706(k) of the Act?

We conclude from the language and history of Title VII, the nature of Duello's appeal under Wis. Adm. Code sec. UWS 3.08, and the furtherance in those proceedings of the objective of Title VII to remedy discrimination in employment practices, that Duello's appeal was a "proceeding" under § 706(k).

## CFRR APPEAL AS "PROCEEDING" UNDER § 706(k)

In its comprehensive opinion, the circuit court identified two approaches to "conceptualizing" the "niche" of the CFRR proceedings in the Title VII framework: one approach strictly construes the language of Title VII by distinguishing between required and optional state and local proceedings; the other liberally construes Title VII by incorporating optional state and local proceedings into the mandated design. The court concluded: "In the instant case I find that the strict approach to Title VII and *Carey [New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54 (1980)] is the more judicious." *Id.* at 13. The circuit court stated that the strict approach "adheres to a literal reading of *Carey* and insists upon the award of attorney's fees only in state and local proceedings which are required by § 706(k)."

### (1)

The circuit court was persuaded by the "policy reasoning" of the court in *Manders v. Oklahoma ex rel. Dep't of Mental Health,* 875 F.2d 263 (10th Cir. 1989). In *Manders,* female state hospital employees sought attorney's fees under § 706(k) for legal services rendered them in a grievance proceeding wherein they sought

relief from their supervisor's alleged sexual harassment. The court held that the grievance procedure provided by the state was an optional enforcement mechanism "additional to, not a precondition of, Title VII enforcement, and . . . not an integral part of the Title VII scheme." *Id.* at 267. The *Manders* court concluded that "[b]ecause the internal grievance procedure was not a prerequisite to the plaintiffs' filing a Title VII action, the procedure does not fall within section 706(k)'s 'action or proceeding' language and attorneys' fees for services during the grievance procedure are not available." *Id.*

The circuit court analogized Wis. Adm. Code sec. UWS 3.08 to the *Manders* internal grievance procedure. However, in *Manders,* the internal grievance procedure was an "informal resolution[ ]" of discrimination in the work environment. *Manders,* 875 F.2d at 267. Section UWS 3.08 is a "law" which relates in significant part to employment discrimination. The CFRR must consider whether a nonrenewal decision was based in any significant degree upon "[f]actors proscribed by applicable state or federal law regarding fair employment practices. . . ." Section UWS 3.08(1)(b).

We conclude that *Manders* applies only where the "proceeding" is a general grievance procedure established to deal with employees' grievances, including discharge. *Manders* does not apply to state or local institutions and procedures which are intended to, and do, address unlawful employment practices taken because of an employee's race, color, religion, sex or national origin. Such institutions and procedures play a significant role in the Title VII enforcement scheme. Further, Congress intended to facilitate the bringing of discrimination complaints. *Carey,* 447 U.S. at 63. Denying fee-shifting to a complainant who chooses to use state and local

institutions frustrates that intent and also frustrates Congress' intent that discriminatory employment practices be remedied by voluntary compliance, if possible.

### (2)

The circuit court further concluded that the strict approach to construction of Title VII was consistent with Wisconsin's "strong adherence" to the American rule as to attorney's fees. However, the Wisconsin Supreme Court has refused to adhere to that rule in employment discrimination cases. In *Watkins v. LIRC,* 117 Wis. 2d 753, 764, 345 N.W.2d 482, 487 (1984), the court held that it would be contrary to the purposes of the Wisconsin Fair Employment Act if the person discriminated against was not made "whole" by recovering a reasonable attorney's fee.

### (3)

Ultimately, we return to the question whether the CFRR review of Duello's nonrenewal was a "proceeding under . . . Title [VII]." We find no more authoritative guidance in answering that question than *New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54 (1980).

In *Carey,* the Court rejected the argument that the words "or proceeding" in § 706(k) authorize fee awards only for work done in federal administrative proceedings, such as those before the EEOC, but not for state administrative proceedings. *Id.* at 61–62. The Court stated:

> Section 706(k) authorizes a fee award to the prevailing party in "*any* . . . proceeding under this title." (Emphasis added.) The same Title creates the system of deferral to state and local remedies. The statute uses the word "proceeding" to describe the state and

local remedies to which complainants are required to resort.

447 U.S. at 62.

We agree with the court in *Moreno v. City and County of San Francisco,* 567 F. Supp. 458, 459 (1983), that while *Carey*'s "required-to-resort" language supports the argument that § 706(k) is limited to administrative proceedings before the § 706 agency, *Carey*'s reasoning does not; nor does the language of *Carey,* read in its entirety. We conclude that the following language more accurately states the Court's conclusion:

> [T]hroughout Title VII the word "proceeding," or its plural form, is used to refer to all the different types of proceedings in which the statute is enforced, state and federal, administrative and judicial. The conclusion that fees are authorized for work done at the state and local levels is inescapable.

447 U.S. at 62–63.

The *Carey* Court concluded that the words of § 706(k) "leave little doubt that fee awards are authorized for legal work done in 'proceedings' other than court actions." 447 U.S. at 61. The Court noted that Congress had used "the broadly inclusive disjunctive phrase 'action or proceeding' " in authorizing fee awards. *Id.* We read *Carey* to hold that Congress intended to authorize a fee award for legal work done before *any* state or local institution which is charged with remedying employment discrimination.

The *Carey* Court quoted *Alexander v. Gardener-Denver Co.,* 415 U.S. 36, 48–49 (1974), as follows: " 'Title VII was designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination.' " 447 U.S. at 67. The Court continued: "Title VII explicitly leaves the States free,

and indeed encourages them, to exercise their regulatory power over discriminatory employment practices." *Id.*

The meaning of "proceeding" in Title VII can best be understood by contrasting its meaning with the meaning of "proceeding" in the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988(b). Section 1988(b) authorizes a court to award a reasonable attorney's fee to the prevailing party in "any action or proceeding" to enforce certain statutes, including 42 U.S.C. § 1983. In *Webb v. Dyer County Bd. of Educ.*, 471 U.S. 234 (1985), the Court held that a prevailing plaintiff was not entitled to attorney's fees for time spent pursuing optional administrative proceedings prior to filing a civil rights action under § 1983.

The Court noted the similarity in language between § 1988 and § 706(k) of Title VII. However, it rejected Webb's argument that the reasoning in *Carey* as to the scope of § 706(k) supported an award for attorney's fees for the services performed in proceedings before the school board challenging the board's termination of his employment. The Court said:

> Because § 1983 stands "as an independent avenue of relief" and petitioner "could go straight to court to assert it," the School Board proceedings in this case simply do not have the same integral function under § 1983 that state administrative proceedings have under Title VII.

471 U.S. at 241 (citation omitted).

In contrast to § 1983, deferral to a state or local agency is required by Title VII where there is "a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice . . .." Section 706(c) [42 U.S.C. § 2000e–5(c)]. "The purpose of

this provision is to 'avoid federal action whenever possible by making the state a partner in the enforcement of Title VII.' " *Greenlow v. California Dep't of Benefit Payments,* 413 F.Supp. 420, 423 (E.D. Cal. 1976).

Duello could not "go straight to court" to assert her claim. She was required by Title VII, 42 U.S.C. § 2000e-5(c), to exhaust her administrative remedies before filing her action. Accordingly, she filed her complaint with the Equal Rights Division of DILHR. That filing was also a filing with the EEOC. Under sec. 111.375(2), Stats., the state Personnel Commission was required to process Duello's complaint. The commission deferred action on her complaint until the CFRR completed its review. The purpose of EEOC deferral is to "permit the state to use the methods of reconciliation available under its laws." *White v. Dallas Indep. School Dist.,* 581 F.2d 556, 560 (5th Cir. 1978).

We find nothing in Title VII's referral and deferral scheme which limits the methods of reconciliation of discrimination claims to those provided by the § 706 agency. One commentator has noted that the requirement that a state or local agency exist which may remedy discrimination "is obviously expansive." I C. Sullivan, M. Zimmer and R. Richards, EMPLOYMENT DISCRIMINATION § 11.6.1, at 458 (2d ed. 1988). "Clearly, a conventional state fair employment practice commission is not necessary." *Id.* In *Moreno,* the court allowed the claimant to recover attorney's fees for legal services performed in successfully prosecuting his claim of employment discrimination before the San Francisco Civil Service Commission.

The University of Wisconsin system has by administrative rule exercised its regulatory power over discriminatory employment practices within the system. Duello fully exhausted her remedies under the rule. First, she

filed a complaint with the federally-mandated AAO,[9] alleging that the department's nonrenewal decision was based on her sex. She received a favorable report on her complaint and asked the department to reconsider its decision. When the department refused her request, she appealed her nonrenewal to the CFRR pursuant to sec. UWS 3.08. Subsection (1)(b) requires that the CFRR consider whether a nonrenewal decision was based on "[f]actors proscribed by applicable state or federal law regarding fair employment practices." We conclude that sec. UWS 3.08 is an "existing law[ ]" and that the CFRR is an "existing . . . institution[ ] relating to employment discrimination." *Carey,* 447 U.S. at 67.

### (4)

The board argues that the Personnel Commission could not defer to the CFRR because sec. 111.375(2), Stats., requires that the commission process the complaints of discrimination filed against state agencies and it has no authority to delegate its decisionmaking responsibility. This narrow view of the referral and deferral scheme under Title VII runs counter to the philosophy which encourages conciliation of discrimination claims. That philosophy compels a construction of Title VII which encourages the resolution of claims of discrimination within the agency or institution, if possible. If the board's view is adopted in this case, the state may realize a short-term gain by avoiding payment of Duello's attorney's fees but the long-term loss will be substantial when complainants refuse to use ameliora-

---

[9]The board does not deny Duello's assertion that the University of Wisconsin system is required by federal law to maintain an affirmative action agency such as the Office of Affirmative Action and Compliance.

tive procedures provided by agencies to resolve claims of discrimination within the agencies.

(5)

Thus far we have been primarily concerned with enforcement of Duello's right to be free from discrimination. However, the plaintiff in an employment discrimination suit acts to vindicate public policy as well as an individual right. *Carey,* 447 U.S. at 63; *Watkins,* 117 Wis. 2d at 764, 345 N.W.2d at 488.

In *Carey,* 447 U.S. at 63, the Court said: "Because Congress has cast the Title VII plaintiff in the role of 'a private attorney general,' vindicating a policy 'of the highest priority,' a prevailing plaintiff 'ordinarily is to be awarded attorney's fees in all but special circumstances.' " (quoting *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 416-17 (1978)). Permitting an attorney's fee award to such a plaintiff encourages private enforcement of laws proscribing employment discrimination and relieves administrative and judicial institutions of the burden of governmental enforcement. Permitting an attorney's fee award to such a plaintiff for legal work done in administrative proceedings under administrative rules specifically intended to remedy employment discrimination encourages early and voluntary resolution of discrimination grievances without resort to the courts.

As *Carey* makes clear, Congress intended to encourage state and local resolution of employment discrimination complaints. We therefore hold that the circuit court erred when it concluded that Duello could not be awarded a reasonable attorney's fee under § 706(k) for legal services performed for her in the proceedings before

the CFRR.[10]

*By the Court.*—Order reversed.

[10]Duello argues that Wisconsin courts should strive to interpret Title VII as has the Seventh Circuit Court of Appeals in *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760 (7th Cir. 1982). We agree that a lack of congruence in construction of Title VII between the federal and state courts may lead to undesirable forum-shopping. However, we conclude that *Chrapliwy* is inapposite. That decision involved the discretionary award of attorney's fees for work done in Title VII litigation and did not construe the meaning of "proceeding" in § 706(k).

The board distinguishes *Chrapliwy* and *Moreno* on the grounds that in those cases the plaintiffs prevailed while here Duello did not prevail at any level. We need not consider the board's claim that Duello did not prevail because we do not rely on *Chrapliwy* and we rely on *Moreno* solely for the proposition that *Carey* is broader than its "required-to resort" language implies.