Kathleen LINDAS, Plaintiff-Appellant,†

v.

Elmer CADY, Robert Hable, State of Wisconsin Department of Health & Social Services, Defendants-Respondents.

Court of Appeals

*No. 91-1293. Submitted on briefs June 24, 1992.—Decided March 11, 1993.*

(Also reported in 499 N.W.2d 692.)

†Petition to review filed.

272

For the plaintiff-appellant the cause was submitted on the briefs of *Jeff Scott Olson* of *Julian, Olson & Lasker, S.C.* of Madison.

For the defendants-respondents the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Bruce A. Olsen,* assistant attorney general.

Before Eich, C.J., Dykman and Sundby, JJ.

DYKMAN, J. This is an appeal from a judgment which dismissed Kathleen Lindas's 42 U.S.C. § 2000e-2(a)(1) (Title VII) claim, and from a memorandum decision which dismissed her 42 U.S.C. § 1983 (sec. 1983) claim. We affirm.

This case began twelve years ago. Its facts and history through mid-1989 are found in *Lindas v. Cady,* 150 Wis. 2d 421, 441 N.W.2d 705 (1989). After the supreme court reinstated Lindas's Title VII claim, the matter was set for trial. In addition, the trial court reinstated Lindas's sec. 1983 claim because *Gray v. Lacke,* 885 F.2d 399 (7th Cir. 1989), had held that sec. 1983 actions were governed by a six-year statute of limitations, not a three-year statute of limitations which the trial court had previously concluded barred Lindas's sec. 1983 claim. The court also permitted defendants to raise the defenses of *res judicata* and estoppel by record. Defendants argued that those defenses barred Lindas's sec. 1983 claim. The trial court agreed and dismissed that claim.

Lindas tried her Title VII claim in March 1991. Since Title VII did not permit either party to have a jury

trial, the trial was to the court. In April 1991, the court decided the Title VII claim against Lindas. In May 1991, Lindas appealed.

On November 21, 1991, President Bush signed the Civil Rights Act of 1991. This act provided for the right to a jury trial in Title VII actions. Lindas moved this court to vacate the trial court's judgment as to her Title VII claim because she was denied a jury trial. We denied this motion, saving the issue for this decision.

## SECTION 1983 CLAIM

In 1980, Lindas filed a complaint with the Wisconsin Personnel Commission alleging employment sex discrimination. The commission issued an initial determination finding no probable cause to believe Lindas's employment termination was caused by discrimination. Lindas appealed, and after a four-day hearing, the commission again determined that no probable cause existed. Lindas did not seek judicial review of this decision. Instead, she commenced this action, seeking relief under Title VII and sec. 1983. The trial court dismissed the sec. 1983 claim, reasoning that it was barred by Lindas's prior complaint filed with the commission.

### *Adequate Opportunity to Litigate*

The United States Supreme Court has declared that when a state agency acts in a judicial capacity to resolve disputed issues of fact which are properly before it, and the parties have had an *adequate* opportunity to litigate, federal courts must render the same preclusive effect to the agency's factfinding that the courts of that state would assign. *University of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986). This holding expressly applies to federal courts of appeal and district courts. However, we con-

clude that before we address the common law of preclusion in Wisconsin, *Elliott* requires us to determine whether the commission was acting in a judicial capacity and the parties had an adequate opportunity to litigate the factual issues.

Because there is no dispute concerning the commission's authority to determine probable cause or the capacity in which it was acting when it held the hearing, we only consider whether Lindas had an adequate opportunity to litigate. *Elliott* does not specify the factors that courts should consider when deciding this issue. However, we believe the appropriate test is found in *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461 (1982).

In *Kremer*, the issue was whether the plaintiff was precluded from asserting a Title VII claim in federal district court after a state court affirmed an agency's finding that there was no probable cause to believe employment discrimination occurred. The Court held that state law controlled in resolving the question as long as the state proceedings offered a "full and fair" opportunity to litigate. *Id.* at 480-81, 481 n.22. To pass this test, the state proceedings "need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause . . .." *Id.* at 481. While the Court stated that there is "no single model of procedural fairness," it found the following "panoply" of procedures sufficient under the due process clause: (1) the claimant could present charges through testimony and submit as many exhibits as desired; (2) the claimant could rebut the respondent's evidence; (3) an attorney could represent the claimant during the agency's investigation; (4) the claimant could request the agency to subpoena witnesses; and (5) the claimant was entitled to seek judicial review of the agency's decision. *Id.* at 483-84.

We find support for equating an "adequate opportunity" with a "full and fair opportunity" in *Buckhalter v. Pepsi-Cola Gen. Bottlers, Inc.*, 820 F.2d 892, 896-97 (7th Cir. 1987). In *Buckhalter*, after an adverse ruling by the Illinois Human Rights Commission (HRC), the plaintiff-employee opted to file a federal lawsuit asserting claims under Title VII and 42 U.S.C. § 1981, rather than obtain judicial review of the HRC's decision in the state courts. The Seventh Circuit based its conclusion that the HRC hearing provided an adequate opportunity to litigate on essentially the same set of procedures discussed in *Kremer* and noted above.

In its memorandum decision and order dated August 14, 1990, the trial court provided the following summary of the personnel commission proceeding:

> The defendants assert, and the plaintiff concedes, that the plaintiff availed herself of a wide range of procedural process in the [p]ersonnel [c]ommission case. She requested and received time extensions amounting to two years from the filing of the charge in which to conduct pre-hearing discovery. She was permitted to substitute the original hearing examiner. She was able to subpoena witnesses and to have all witnesses sequestered. She was represented by counsel throughout the entire proceeding. At the probable cause hearing, counsel gave an opening statement, examined and cross-examined witnesses and presented a closing argument. Plaintiff offered [fifty] exhibits for the hearing record. Her counsel was permitted to depose a witness and submit a brief after the hearing. She had the opportunity to petition the [p]ersonnel [c]ommission for re-hearing and to seek judicial review of the [c]ommission's findings and conclusions.

It is clear from this summary that the commission proceeding satisfied the minimum procedural requirements of the due process clause, and thus afforded Lindas an adequate opportunity to litigate.

In analyzing the adequate opportunity issue, the dissent focuses on the reasons why Lindas lacked incentive to seek judicial review of the personnel commission's decision: (1) the commission could not award compensatory damages beyond back pay; (2) the commission could not provide prospective relief; and (3) the "most significant" reason—the inability to obtain a jury trial in the commission proceedings.[1] *See* dissent at 298-99. Reading *Elliott* in light of *Kremer*, it is clear that such

---

[1] The focus on Lindas's incentive to litigate reflects the dissent's contention that *Elliott* restricts us to considering only whether the doctrine of issue preclusion prevents Lindas from asserting her sec. 1983 claim in the trial court. *See* dissent at 293-95. The dissent reads *Elliott* too narrowly. In our view, the clause, "the same preclusive effect to which it would be entitled in the State's courts," *Elliott*, 478 U.S. at 799, requires us to examine whether under Wisconsin law, any of the various types of preclusion— *res judicata*, collateral or direct estoppel, or estoppel by record—prevents Lindas from proceeding with the sec. 1983 claim.

We find support for our position in *Kremer*, 456 U.S. at 481 n.22, 485, and *Davis v. Spanish Coalition for Jobs, Inc.*, 676 F. Supp. 171, 174 (N.D. Ill. 1988). In the *Kremer* footnote, the Supreme Court pointed out that neither lower court had discussed which doctrine, *res judicata* or collateral estoppel, would preclude the Title VII claim in federal court. The Court did not decide the question. Instead, it held that a Title VII claim could be precluded under either doctrine (depending upon state law) by an agency determination adverse to the claimant. In *Davis*, the court applied *res judicata* analysis in determining that the claimant was barred by an unreviewed agency ruling from asserting a sec. 1983 discrimination claim.

considerations are irrelevant. The fact that judicial review was available is what matters; that Lindas made the strategic choice to forego such review is of no consequence. *See Kremer,* 456 U.S. at 485. Furthermore, had the Supreme Court considered the availability of a jury of paramount importance, it would have been unnecessary for the Court to remand *Elliott,* as there was no jury present at the university's hearing on the charges.

*Res Judicata*

*Acharya* and Prior Cases

Lindas argues that Wisconsin law does not permit preclusion by unreviewed administrative decisions; here, the personnel commission's determination of no probable cause. She cites *Board of Regents of Univ. of Wis. Sys. v. Wisconsin Personnel Comm'n,* 103 Wis. 2d 545, 309 N.W.2d 366 (Ct. App. 1981), and several older cases for the rule that "Wisconsin rejects the application of the doctrine of *res judicata* to the proceedings of an administrative agency." *Id.* at 552, 309 N.W.2d at 369.

But in all of the decisions Lindas cites for this rule, the question was whether an administrative agency was required to give preclusive effect to one of its own prior decisions. Lindas agrees with this observation, but asserts that we held that administrative decisions are not entitled to preclusive effect in *any* subsequent forum because, in *Board of Regents,* we said: "Even if *the long-standing denial of res judicata effect to an administrative determination* were to be overhauled and modernized, it would not be applicable to the circumstances of this case because [two of the litigants] were not parties to the declaratory ruling of the [p]ersonnel [b]oard." *Id.* (emphasis added).

278

Lindas reads too much into this quote from *Board of Regents*. She has cited no case prior to *Board of Regents* where a Wisconsin court has specifically held that, whatever the forum, an administrative decision is not entitled to preclusive effect. There was no reason or necessity in *Board of Regents* for us to consider preclusion in an agency-court situation because the issue in *Board of Regents* was the preclusive effect of an agency determination on a subsequent agency determination. We are required to give the reasons for our decisions. Section 752.41(1), Stats. Had we intended in *Board of Regents* to reach the question of preclusion in agency-court determinations, we would have explained why, when the facts did not require such a holding, we were nonetheless doing so.

Lindas contends that it is absurd to hold that while agency decisions do not have preclusive effect on subsequent agency proceedings, courts must give preclusive effect to such decisions. This contention focuses on the powers of agencies and courts. But *res judicata* and estoppel by record prevent a *party*, not a court or an agency, from relitigating what was litigated in a former proceeding. Preclusion is based on the assumption that fairness to the defendant requires that at some point, litigation involving the particular controversy must end. *Schaeffer v. State Personnel Comm'n*, 150 Wis. 2d 132, 138-39, 441 N.W.2d 292, 295 (Ct. App. 1989).

We discussed preclusion by prior administrative determination in *Acharya v. Local No. 1, WSEU*, 146 Wis. 2d 693, 432 N.W.2d 140 (Ct. App. 1988). In *Acharya*, the plaintiff claimed that her union breached the terms of the parties' collective bargaining agreement and its duty of fair representation. The Wisconsin Employment Relations Commission (WERC) held against plaintiff and dismissed her complaint. Plaintiff

sought judicial review of only that part of the order which concluded that the union did not breach the terms of the collective bargaining agreement. *Id.* at 695, 432 N.W.2d at 141.

After the circuit court upheld WERC, plaintiff began a negligence action against the union. We concluded that the negligence complaint alleged the same facts that plaintiff had alleged in the "fair representation" part of her complaint before the commission. *Id.* at 698, 432 N.W.2d at 142. Though this part of the commission's order was unreviewed, we applied *res judicata* and estoppel by record principles and affirmed the dismissal of the negligence complaint. *Id.* at 696-700, 432 N.W.2d at 142-43.

The parties disagree on the effect of *Acharya*. Lindas asserts that the last sentence of *Acharya* contains the key to understanding the case. That sentence reads: "Acharya has had her opportunity to litigate the issues she advances in this action, and she is bound by their resolution in the proceedings before the WERC and *on review to the circuit court.*" *Id.* at 700, 432 N.W.2d at 143 (emphasis added).

It is undisputed that in the *Acharya* judicial review, the only issue reviewed by the circuit court was a claim that the union had breached the terms of the collective bargaining agreement. Lindas concludes that the only way to reconcile the rest of the opinion with its final sentence is to conclude that what we meant was that preclusive effect will be given to administrative decisions only if they are given judicial review.

We could have been more precise in our final sentence of *Acharya*. But the entire opinion considers the preclusive effect of an unreviewed administrative decision. We had no need to consider the preclusive effect of reviewed administrative decisions, for that issue was not

before us. The final sentence of *Acharya* can be read as putting an end to all of Acharya's claims against her union, and precluding yet another lawsuit based on the reviewed claim that the union had breached the terms of the collective bargaining agreement. Given the thrust of the rest of the opinion, we choose to adopt this meaning for its last sentence.

Lindas asks us to overrule *Acharya*. In her reply brief, she suggests that hearings before the personnel commission give a plaintiff the opportunity to assess his or her case in a risk-free environment. We do not believe that it is a wise use of increasingly scarce state resources to use state agency proceedings as a testing ground for potential court cases. We have said that we are bound by our prior decisions. *Metropolitan Holding Co. v. Board of Review of Milwaukee*, 167 Wis. 2d 134, 148-49, 482 N.W.2d 654, 660 (Ct. App. 1992). We decline Lindas's invitation to overrule *Acharya*. In light of this conclusion, we need not discuss respondents' contention that RESTATEMENT (SECOND) OF JUDGMENTS § 83 (1982) also gives preclusive effect to unreviewed administrative decisions.

## Elements

■
But *res judicata* and estoppel by record occur only where several factors are present. The parties differ as to which factors are required. Lindas uses factors considered in collateral estoppel cases. *Crowall v. Heritage Mut. Ins. Co.*, 118 Wis. 2d 120, 346 N.W.2d 327 (Ct. App. 1984), is such a case. There, we concluded that for collateral estoppel to apply, a party against whom collateral estoppel is asserted must be given the opportunity to show that he or she did not have a " 'fair opportunity procedurally, substantively and evidentially to pursue his

[or her] claim the first time.' " *Id.* at 126, 346 N.W.2d at 331 (quoting *Blonder-Tongue Laboratories, Inc. v. University of Ill. Found.*, 402 U.S. 313, 333 (1971)). "This includes a consideration of the incentive to litigate in the first action." *Id.* This "fair opportunity to litigate" has replaced the "mutuality of parties" requirement previously imposed by courts in collateral estoppel cases. *Kichefski v. American Family Mut. Ins. Co.*, 132 Wis. 2d 74, 78, 390 N.W.2d 76, 78 (Ct. App. 1986).

■

But *Acharya,* upon which we rely, is not a collateral estoppel case. In *Acharya,* we relied on *Leimert v. McCann,* 79 Wis. 2d 289, 293-94, 255 N.W.2d 526, 528-29 (1977), for the factors necessary before estoppel by record or *res judicata* would be applied. *Leimert's* holding, that under the doctrine of *res judicata,* for an initial action to bar a subsequent action, there must be an identity of parties or their privies and an identity of causes of action or claims, was recently affirmed in *Parks v. City of Madison,* 171 Wis. 2d 730, 734-35, 492 N.W.2d 365, 368 (Ct. App. 1992). The "identity of party" factor is the same in *res judicata* and estoppel by record cases. *United States Fidelity & Guar. Co. v. Goldblatt Bros., Inc.,* 142 Wis. 2d 187, 191, 417 N.W.2d 417, 419 (Ct. App. 1987). Were we to conclude that factors other than those required by *Leimert* were necessary in *res judicata* and estoppel by record cases, we would be overruling *Leimert.* We may not do this. *See State v. Lossman,* 118 Wis. 2d 526, 533, 348 N.W.2d 159, 163 (1984). We conclude that in applying *res judicata* and estoppel by record, the applicable factors are whether there is an identity of parties or. their privies, and whether there exists an identity between the causes of action or claims.

## Identity of Parties

Lindas does not contest that there is an identity of causes of action or claims between her personnel commission hearing and this lawsuit. But she argues that there is no identity of parties because her personnel commission hearing was against the Department of Health and Social Services (DHSS), while here the defendants are employees of that department. She cites *Gray v. Lacke*, 885 F.2d 399, 404-06 (7th Cir. 1989), which held that there was no identity of parties where plaintiff first brought suit against Dane county and then, after losing that suit, brought the same suit against employees of Dane county. *Gray* held that although *res judicata* barred the second suit against the employees in their official capacities, it did not bar the second suit against them in their individual capacities.

But, as Lindas concedes, whether unreviewed administrative decisions are given preclusive effect is a question of state law. *Elliott*, 478 U.S. at 799. Thus, state cases, rather than *Gray*, determine whether Lindas's personnel commission hearing is a bar to her sec. 1983 claim in this action.

A prior judgment against an employer bars a subsequent suit against its employees under the doctrine of *res judicata*. *Landess v. Schmidt*, 115 Wis. 2d 186, 196-97, 340 N.W.2d 213, 218 (Ct. App. 1983). RESTATEMENT (SECOND) OF JUDGMENTS § 51 (1982) provides:

> If two persons have a relationship such that one of them is vicariously responsible for the conduct of the other, and an action is brought by the injured person against one of them, the judgment in the action has the following preclusive effects against the

injured person in a subsequent action against the other.

(1) A judgment against the injured person that bars him from reasserting his claim against the defendant in the first action extinguishes any claim he has against the other person responsible for the conduct unless:

(a) The claim asserted in the second action is based upon grounds that could not have been asserted against the defendant in the first action; or

(b) The judgment in the first action was based on a defense that was personal to the defendant in the first action.

Section 895.46, Stats., provides in pertinent part that if a state employee, acting as an individual while carrying out duties as an employee, has a judgment rendered against him or her, the judgment shall be paid by the state. As a practical matter, the state is vicariously responsible for the actions of its employees, though limited by the conditions of sec. 895.46.

Lindas contends that vicarious liability is not the same as sec. 895.46, Stats., liability because DHSS could not be joined in a sec. 1983 action, and because a judgment-proof defendant could stymie a successful plaintiff by failing to exercise his or her sec. 895.46 indemnification rights. We disagree. A plaintiff's interest is to obtain a collectible judgment. Lindas does not assert that her interest in this case is to obtain money from someone other than the state treasurer. Whether a plaintiff obtains a collectible judgment by naming a state agency or its officers is insignificant. Though a perverse, judgment-proof defendant, for whom the future holds only certain financial disaster, might be able to prevent a plaintiff from collecting a judgment, the likelihood of this occurring is virtually nil. To the extent the state would be liable under sec. 895.46 for the actions of its

employees, the state is vicariously liable for *res judicata* and estoppel by record purposes.

We conclude that there was a sufficient identity of parties between Lindas's personnel commission hearing and this action. Thus, pursuant to *Acharya, res judicata* and estoppel by record prevent Lindas from relitigating her sec. 1983 claim in this action.

## Retroactive Application

Lindas asserts that even if Wisconsin law gives preclusive effect to unreviewed administrative decisions, this holding should not be retroactively applied to her case. She notes that this action was commenced in October 1985, and that as of that date, the law in Wisconsin was that unreviewed administrative agency decisions were not granted preclusive effect in subsequent sec. 1983 actions.

We acknowledge the rule that a judicial decision which overrules clear past precedent should not be applied retroactively to cases filed before it was handed down. *See Chevron Oil Co. v. Huson*, 404 U.S. 97, 106 (1971). But *Acharya* did not overrule past precedent. Indeed, *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394 (1966), the basis for our holding in *Acharya* that unreviewed administrative decisions have preclusive effect in subsequent judicial proceedings, was decided in 1966. When Lindas decided in 1985 to file her Title VII and sec. 1983 claims in the circuit court, *Utah Construction* was nineteen years old and had been followed in Wisconsin. *See Cunegin v. Zayre Dep't Store*, 437 F. Supp. 100, 103 (E.D. Wis. 1977). Wisconsin law was, at best, undecided in 1985. *Board of Regents*, 103 Wis. 2d at 545, 309 N.W.2d at 366, and the other cases

Lindas relies upon held only that an agency determination does not have preclusive effect on future determinations of that agency. Any past precedent that *Acharya* might have overruled was nowhere near the "clear past precedent" that prevents retroactive application of a new rule.[2]

## Policy

The dissent concludes that to prohibit further litigation in this matter is unfair, unjust and contrary to public policy.[3] Dissent at 299. In balancing the competing interests, we conclude that the scales weigh heavily in favor of the respondents.

█

Eradicating employment discrimination and providing an alleged victim of such discrimination with a forum for obtaining a full and fair adjudication of his or her claim are extremely important policies. However, the hearing before the personnel commission and the trial to

---

[2] We do not imply that *Acharya* overruled past precedent. It did not.

[3] Lindas also claims such a prohibition is unfair. She contends that she had little incentive to litigate the probable cause issue before the commission because all she stood to gain was a hearing on the merits of her claims. In her view, such a right "would have been essentially worthless because almost nobody ever wins these hearings." The benefit of going through the probable cause hearing was the "opportunity to assess the defense case in a risk-free environment . . . prior to deciding whether to incur the risks and expense of court litigation." If it were true that the commission is biased against claimants, the availability of judicial review and a potential Title VII action in either federal or state court are designed to alleviate such a problem. Furthermore, we believe that providing a risk-free environment for discovery is a wholly inappropriate use of an administrative forum established to conciliate claims.

the court on the Title VII claim have sufficiently advanced these interests, and a third litigation of this matter would be totally unnecessary in this regard.

On the other hand, by holding that *res judicata* bars Lindas's sec. 1983 claim, we "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94 (1980).

## TITLE VII RETROACTIVITY

At the time that Lindas tried her Title VII claim, she was not entitled to a jury trial. However, eight months later, the Civil Rights Act of 1991 was enacted. The new law gave plaintiffs in Title VII actions the right to trial by jury as well as the right to recover compensatory and punitive damages. Lindas argues that the new legislation applies to her, and that she is therefore entitled to a new trial before a jury.

Whether the Civil Rights Act of 1991 applies retroactively is a question that has been much litigated in the federal courts. The issue is complicated by an apparent conflict between *Bradley v. School Bd. of Richmond*, 416 U.S. 696 (1974), and *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204 (1988).[4] The Supreme Court recognized this conflict in *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827 (1990), but declined to resolve the problem. Various maxims pertaining to discerning legislative intent have led to conflicting results. Legislative history from Congress shows that some persons associated with passage of the act believed that the act was retroactive, and that others believed it was not. A

---

[4] *Bradley* suggests an initial presumption that legislation is retroactive. *Bowen* suggests the opposite.

previous draft of the legislation, clear on the retroactivity issue, was vetoed by President Bush. Attempts to clarify the retroactivity problem were defeated. It appears that Congress, unable to agree on whether the Civil Rights Act of 1991 would be retroactive, decided to leave the decision on this issue to the courts.

The federal courts have responded, and a clear trend has developed. The Fifth, Sixth, Seventh, Eighth, Eleventh and District of Columbia Circuits have concluded that the act is not retroactive. *See Rowe v. Sullivan,* 967 F.2d 186 (5th Cir. 1992); *Vogel v. City of Cincinnati,* 959 F.2d 594 (6th Cir. 1992); *Mozee v. American Commercial Marine Serv. Co.,* 963 F.2d 929 (7th Cir. 1992); *Fray v. Omaha World Herald Co.,* 960 F.2d 1370 (8th Cir. 1992); *Baynes v. AT & T Technologies, Inc.,* 976 F.2d 1370 (11th Cir. 1992); *Gersman v. Group Health Ass'n,* 975 F.2d 886 (D.C. Cir. 1992), *petition for cert. filed,* 61 U.S.L.W. 3523 (U.S. Jan. 13, 1993) (No. 92–1190). The Ninth Circuit has concluded that the act is retroactive. *See Estate of Reynolds v. Martin,* 985 F.2d 470 (9th Cir. 1993).[5]

*Bowen,* provides that "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." 488 U.S. at 208. We recognize that this is at odds with *Bradley,* where the Court said: "[A] court is to apply the

---

[5] The United States Supreme Court announced recently that it will review two federal circuit cases on the retroactive application of the Civil Rights Act of 1991. *See Landgraf v. USI Film Prods.,* 968 F.2d 427 (5th Cir. 1992), *cert. granted in part,* 113 S. Ct. 1250 (1993) (Nos. 92–757 and 92–938); *Harvis v. Roadway Express, Inc.,* 973 F.2d 490 (6th Cir. 1992), *cert. granted in part, Landgraf v. USI Film Prods.,* 113 S. Ct. 1250 (1993) (Nos. 92–757 and 92–938).

law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." 416 U.S at 711. But, "[w]hen the decisions of our supreme court appear to be inconsistent, we follow its most recent pronouncement." *Spacesaver Corp. v. DOR*, 140 Wis. 2d 498, 502, 410 N.W.2d 646, 648 (Ct. App. 1987). We see no reason not to follow this rule for United States Supreme Court cases as well. Thus, *Bowen* suggests the conclusion that the Civil Rights Act of 1991 is not retroactive. We follow the weight of federal authority that there is no language in that act which requires a contrary result. We therefore conclude that the Civil Rights Act of 1991 is not retroactive.

*By the Court.*—Judgment affirmed.

SUNDBY, J. (*dissenting*). Today we penalize Kathleen Lindas for careful lawyering. We hold that because she pursued her administrative remedies in 1980, when case law required exhaustion of administrative remedies, she is now barred from maintaining an action on her federal tort claim under 42 U.S.C. § 1983.

It is now established that a plaintiff need not exhaust his or her administrative remedies before beginning a sec. 1983 action. *Casteel v. Vaade*, 167 Wis. 2d 1, 481 N.W.2d 476 (1992). However, in *Kramer v. Horton*, 128 Wis. 2d 404, 383 N.W.2d 54, *cert. denied*, 479 U.S. 918 (1986), the Wisconsin Supreme Court had ruled that the plaintiff was required to exhaust his state administrative remedies before bringing a sec. 1983 action in a Wisconsin circuit court. *Casteel* overruled *Kramer.* Cady argues that *Kramer,* decided in 1986, could not have influenced Lindas's decision here. She filed her complaint with the personnel commission in 1980. She

began this action October 18, 1985. Five months later, *Kramer* was decided.

However, the Wisconsin Supreme Court had signalled in *Castelaz v. City of Milwaukee*, 94 Wis. 2d 513, 534-35, 289 N.W.2d 259, 269 (1980), that it would require exhaustion of an adequate administrative remedy before it would entertain a sec. 1983 action in state court. The court said:

> The doctrine of exhaustion is a discretionary rather than a constitutional rule in § 1983 cases. There has been no allegation in this case that the civil service procedures available to Mr. Castelaz were inadequate, nor does he claim that the Board was biased, unable, or unwilling to hear his claim. . .. We believe, that the no-exhaustion rule as applied to § 1983 claims brought in state courts is not to be "woodenly" applied. We therefore follow the decisions of a number of the federal circuit courts of appeal which have held that, depending on the case, exhaustion of state administrative remedies may be required. [Citations omitted.]

In view of *Castelaz*, Lindas's attorneys would have been guilty of malpractice had they not first pursued her administrative remedy before beginning her sec. 1983 action. It is true that Lindas did not pursue her state administrative remedy to finality by seeking review of the personnel commission's no-probable cause determination in circuit court. However, Lindas was faced with a dilemma not of her own making. In 1982 the United States Supreme Court had ruled that final state court judgments were entitled to full faith and credit in Title VII actions and that unreviewed determinations by state agencies were not to be given preclusive effect. *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461 (1982). However, reviewed determinations would be given preclusive

effect. Careful lawyering strongly suggested that this holding would be applied to Lindas's sec. 1983 action, as well as her Title VII action. If Lindas had appealed the commission's no-probable cause determination unsuccessfully, she could not have maintained a sec. 1983 action. If she wished to obtain the advantages of a sec. 1983 action—compensatory damages beyond back pay, prospective relief, and most important, the right to a jury trial—she was forced to discontinue prosecution of her complaint under the Wisconsin Fair Employment Act, secs. 111.31-111.395, Stats.

The majority asserts that these considerations are "irrelevant." "The fact that judicial review [of the personnel commission's determination] was available is what matters . . .." Majority op. at 278. Apparently the majority holds that because Lindas could have had the determination of the personnel commission reviewed by the circuit court, she had "an adequate opportunity to litigate" any disputed issue of fact. *University of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986). The majority does not appreciate that this is an issue preclusion or collateral estoppel case, and not a claim preclusion case. My conclusion is borne out by the fact that the majority relies on *Acharya v. Local No. 1, WSEU*, 146 Wis. 2d 693, 432 N.W.2d 140 (Ct. App. 1988). Majority op. at 282. "But *Acharya,* upon which we rely, is not a collateral estoppel case." *Id.* The majority states: "We conclude that in applying *res judicata* and estoppel by record, the applicable factors are whether there is an identity of parties or their privies, and whether there exists an identity between the causes of action or claims." *Id.* at 12. The majority thus applies claim preclusion principles to what is an issue preclusion case.

The Wisconsin Supreme Court recently noted that "[c]ourts in the past have often contributed to the confu-

sion between these two doctrines [collateral estoppel and *res judicata.*]" *Michelle T. v. Crozier*, 173 Wis. 2d 681, 694, 495 N.W.2d 327, 333 (1993) (quoting *Crowall v. Heritage Mut. Ins.*, 118 Wis. 2d 120, 121 n.1, 346 N.W. 327, 329 n.1 (Ct. App. 1984). The Wisconsin court also quoted the United States Supreme court in *Lawlor v. National Screen Serv. Corp.*, 349 U.S. 322, 326 n.6 (1955), "[t]he term *res judicata* is used broadly in the RESTATEMENT to cover merger, bar, collateral estoppel, and direct estoppel." *Michelle T.*, 173 Wis. 2d at 694, 495 N.W.2d at 333. In *Michelle T.*, the Wisconsin Supreme Court accepted the definition of *res judicata* given by the United States Supreme Court in *Lawlor*: "[U]nder the doctrine of *res judicata*, a judgment 'on the merits' in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action." *Id.* at 694 n.13, 495 N.W2d at 333 n.13 (quoting *Lawlor*, 349 U.S. at 326).

The flaw in the majority's analysis arises from its refusal to recognize that this is an issue preclusion case, not a claim preclusion case. Here, there has been no judgment "on the merits" in the administrative proceeding before the personnel commission. It is true that Lindas could have appealed the commission's no-probable cause determination to the circuit court. As I have pointed out, however, had she done so and been unsuccessful, her claim might well have been barred by *res judicata*. However, she did not take that step precisely because of such preclusion. She apparently was willing to take her chances that the commission's no-probable cause determination would not be considered preclusive in a subsequent civil rights action either in federal or state court.

I assume that the majority does not hold that Lindas's sec. 1983 action is barred because she failed to

exhaust her administrative remedy which, of course, included judicial review of the commission's administrative determination. A state court may not require complainants to exhaust state administrative remedies before bringing a sec. 1983 action in state court. *Casteel*, 167 Wis. 2d 1, 481 N.W.2d 476. The Wisconsin court recognized that it was bound by the decisions of the United States Supreme Court in this area, notably *Patsy v. Board of Regents of the State of Fla.*, 457 U.S. 496 (1982), and *Felder v. Casey*, 487 U.S. 131 (1988), *rev'g* 139 Wis. 2d 614, 408 N.W.2d 19 (1987).

Not only are Wisconsin courts bound by the United States Supreme Court's decisions as to the nonapplicability of state exhaustion requirements in federal civil rights actions, the courts are bound by decisions of the United States Supreme Court as to when a civil rights claim brought in a state court is subject to claim preclusion or issue preclusion. The substance of the fact situation here is indistinguishable from that involved in *University of Tenn. v. Elliott*, 478 U.S. 788 (1986). In *Elliott*, a black employee of the university challenged his discharge in a proceeding under the Tennessee Uniform Administrative Procedures Act. He also began an action in federal court under Title VII and other civil rights statutes, including 42 U.S.C. § 1983. He did not obtain the relief he sought in the administrative proceedings. Rather than appeal, he returned to federal court. The university and the defendant employees moved for summary judgment, claiming that the administrative law judge's ruling was entitled to preclusive effect. The district court agreed, but the Sixth Circuit Court of Appeals did not.

The United States Supreme Court granted certiorari to consider petitioner's contention that the Sixth Circuit Court of Appeals erred in holding that state

administrative factfinding is never entitled to preclusive effect in actions under Title VII or sec. 1983. *Elliott*, 478 U.S. at 794. After reviewing the legislative history and the language of Title VII, the Court concluded that the Sixth Circuit correctly held that Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims. *Id.* at 796.

As to sec. 1983 actions, however, the Court found nothing in the language of sec. 1983 or its legislative history which suggested that the principles of issue preclusion should not be applied to the factfinding of administrative bodies acting in a judicial capacity. *Id.* at 797. The Court looked to the policies underlying the full faith and credit clause, although the clause itself was inapplicable, to conclude that the policies underlying the clause are "served by giving preclusive effect to state administrative fact-finding rather than leaving the courts of a second forum, state or federal, free to reach conflicting results." *Id.* at 799 (footnote omitted). Accordingly, the *Elliott* Court held:

> [T]hat when a state agency "acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate," [ *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966),] federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts.

*Id.* (footnote omitted).

Thus, in a case in almost identical procedural posture, the United States Supreme Court applied issue preclusion principles. If the majority had sat in the chairs of the Court, it would have held that Elliott's claim was barred by *res judicata* and would not have inquired

whether Elliott had an adequate opportunity to litigate his claim. However, *Elliott* does not permit a state court to give preclusive effect to an administrative agency's factfinding simply because there was an identity of parties and of claims before the administrative agency. Before a federal court or a state court entertaining a sec. 1983 action may give preclusive effect to unreviewed state agency determinations, the agency must have been acting in a judicial capacity and the parties must have had an adequate opportunity to litigate the claims asserted. Whether we like it or not, *Elliot* requires that we examine: (1) whether the personnel commission acted in a judicial capacity, and (2) whether Lindas has had an adequate opportunity to litigate her discrimination claim.

As the court in *Gjellum v. City of Birmingham,* 829 F.2d 1056, 1069 (11th Cir. 1987), points out, the federal courts generally have yet to decide what type of "factfinding" the *Elliott* court had in mind. I have no doubt that the personnel commission acted in a judicial capacity and resolved disputed issues of fact when it heard witnesses and received evidence on the issue of whether Lindas was discriminated against by the individual defendants on the basis of her sex. I conclude, however, that Lindas did not have "an adequate opportunity to litigate" her claim.

The RESTATEMENT (SECOND) OF JUDGMENTS § 28 (1982), lists exceptions to the general rule of issue preclusion, including the following:

> (3) A new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts . . .; or
>
> . . ..
>
> (5) There is a clear and convincing need for a new determination of the issue (a) because of the

potential adverse impact of the determination on the public interest or the interest of persons not themselves parties in the initial action . . . or (c) because the parties sought to be precluded, as a result of . . . special circumstances, did not have an adequate opportunity *or incentive* to obtain a full and fair adjudication in the initial action. [Emphasis added.]

In comment h to sec. 28, the Reporters state:

There are many instances in which the nature of an action is such that judgment will have a direct impact on those who are not themselves parties. For example . . . an individual may sue as representative of a class.

In comment j to sec. 28, the Reporters state:

[T]he amount in controversy in the first action may have been so small in relation to the amount in controversy in the second that preclusion would be plainly unfair.

. . ..

[W]hether or not relief from the first judgment may be obtained, the court in the second proceeding may conclude that issue preclusion should not apply because the party sought to be bound did not have an adequate opportunity *or incentive* to obtain a full and fair adjudication in the first proceeding. [C]onfined within proper limits, discretion to deny preclusive effect to a determination under the circumstances stated is central to the fair administration of preclusion doctrine. [Emphasis added.]

The Reporter's Note to sec. 28 states that:

Subsection (5) represents an effort to distill from case and commentary those situations in which competing policy considerations outweigh the policy factors underlying direct and collateral estoppel. Such situations are, and should be infrequent, but the basic

296

principles should be sufficiently flexible to accommodate them when a clear need for a redetermination of an issue has been established.

The RESTATEMENT (SECOND) OF JUDGMENTS § 28 was cited with approval in *Michelle T.*, 173 Wis. 2d 681, 689 n.10, 495 N.W.2d 327, 331 n.10.

Issue preclusion (collateral estoppel) is an equitable doctrine, and subject to equitable principles. "A major consideration . . . is fairness to the party against whom collateral estoppel is asserted." *Id.* at 692, 495 N.W.2d at 332 (quoting *Crowall v. Heritage Mut. Ins. Co.*, 118 Wis. 2d 120, 126, 346 N.W.2d 327, 331 (Ct. App. 1984)). It "should only be applied as fairness and justice require." *Jones v. City of Alton,* 757 F.2d 878, 885 (7th Cir. 1985) (quoting *Rotogravure Serv., Inc. v. R. W. Borrowdale Co.,* 77 Ill. App. 3d 518, 525-26, 395 N.E.2d 1143, 1149 (Ill. App. Ct. 1979)). *See also Speaker Sortation Sys., Division of A-T-O, Inc. v. United States Postal Serv.,* 568 F.2d 46, 49-50 (7th Cir. 1978) (doctrine of collateral estoppel may not work injustice on a party); *Dannhausen v. First Nat'l Bank of Sturgeon Bay,* 538 F. Supp. 551, 567 (E.D. Wis. 1982) (doctrine cannot apply when party did not have full and fair opportunity to litigate issue in previous case); *In re D.M.M.,* 137 Wis. 2d 375, 382, 404 N.W.2d 530, 533 (1987) (fairness is one aspect of the application of res judicata); *Desotelle v. Continental Casualty Co.,* 136 Wis. 2d 13, 21-22, 400 N.W.2d 524, 527 (Ct. App. 1986) (*res judicata* and collateral estoppel are founded on principles of fundamental fairness).

I conclude that fairness, justice and public policy require that Lindas be allowed to maintain her civil rights action under 42 U.S.C. § 1983. First, the United States Supreme Court has repeatedly stated that "the dominant characteristic of civil rights actions [is that]

they belong in court." *Burnett v. Grattan*, 468 U.S. 42, 50 (1984) (citing *McDonald v. City of West Branch*, 466 U.S. 284, 290 (1984)). It is only in a civil rights action that the claimant can obtain complete relief.

Second, individuals injured by discrimination serve as "the chosen instrument of Congress to vindicate 'a policy that Congress considered of the highest priority.' " *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 418 (1978) (quoting *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968)). "[T]he plaintiff in an employment discrimination suit acts to vindicate public policy as well as an individual right." *Duello v. Board of Regents of the Univ. of Wis. System*, 170 Wis. 2d 27, 42, 487 N.W.2d 56, 63 (Ct. App. 1992). There is "a clear and convincing need for a new determination" of Lindas's discrimination claim because of the potential adverse effect of the personnel commission's determination on the public interest or the interest of other female employees not parties to the proceedings before the commission. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 28(5).

Third, a new determination of Lindas's claim is warranted because she did not have an adequate opportunity or incentive to obtain "a full and fair adjudication" before the personnel commission. The only issue litigated before the commission was probable cause. Had Lindas successfully appealed the commission's no-probable cause determination, she could not have obtained complete relief from the commission. The commission had no authority to award her compensatory damages beyond back pay. Lindas could not have obtained prospective relief from the commission. This litigation makes clear that Lindas's most significant disincentive to litigate her claim further before the commission was her inability to obtain a jury trial in the administrative

proceedings. The issue before the commission—probable cause—was so minor when considered in relation to the ultimate determination Lindas sought—discrimination —that "preclusion would be plainly unfair." RESTATE- MENT (SECOND) OF JUDGMENTS § 28, comment j. A find- ing of probable cause is merely a threshold finding and has no significance or weight in subsequent proceedings. Finally, preclusion would be unfair and unjust in the unique circumstances of this case. Because of the unset- tled state of the law as to exhaustion and preclusion Lindas was compelled to proceed before the personnel commission or risk losing her right to have her claim decided in court before a jury.

In *Elliot*, Justice Stevens states that giving preclu- sive effect to state administrative determinations will encourage litigants to "forego state judicial review of those determinations—to protect their entitlement to a federal forum." *Elliot*, 478 U.S. at 801 (Stevens, J., dis- senting; comparing *Patsy v. Board of Regents of the State of Fla.*, 457 U.S. 496 (1982); *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100 (1981); and *Moore v. City of East Cleveland, Ohio*, 431 U.S. 494 (1977)). Our decision will have a similar effect, dissuad- ing litigants like Lindas from exhausting administrative remedies. The value of such procedures in conciliating claims will be lost. Because the result is unfair and unjust and contrary to public policy, I respectfully dis- sent from that part of the majority's decision which affirms the judgment dismissing Lindas's civil rights action under 42 U.S.C. § 1983.