Enrique A. **Santos**,
Plaintiff/Appellant,

v.

Jose A. **Santos**, Roque Santos,
Heirs of Vicente A. Santos,
Heirs of Francisca A. Santos, and
Heirs of Ramon A. Santos,
Defendants/Appellees.
Appeal No. 93-017

---

Civil Action No. 92-1366
December 15, 1994
Amended January 6, 1995

Argued and Submitted March 8, 1994

Counsel for appellant: Timothy H. Bellas, Saipan.

Counsel for appellees, the heirs of Francisca A. Santos and Evelyn S. Benavente as representative of the heirs of Roman A. Santos: Jeanne H. Rayphand & Theodore R. Mitchell, Saipan.

Counsel for appellees Jose A. Santos, Roque A. Santos and the heirs of Vicente A. Santos: Vicente T. Salas, Saipan.

BEFORE: DELA CRUZ, Chief Justice, and CRUZ and MACK, Special Judges.

DELA CRUZ, Chief Justice:

The plaintiff/appellant, Enrique A. Santos ("Enrique") appeals from an order granting summary judgment in favor of the defendants/appellees on res judicata grounds. At issue is the ownership of Lots 013 B 19, 013 B 20 and 008 B 05, located on Saipan (hereinafter Lots 19, 20 and 05, respectively). The trial court found that the three parcels belong to all of the heirs of Nicolas C. Santos ("Nicolas"), Enrique's deceased father, and not to Enrique alone. We affirm in part and reverse in part.[1]

## I. FACTS

The estates of Eduvigis Camacho Santos (also known as Debis Delos Santos; hereinafter "Debis") and her brother Nicolas were probated in consolidated orders by the Trust Territory High Court in 1979 ("probate cases 30 and 31"). Those cases resolved the ownership of eight specific parcels. Enrique inherited two of these lots, Lots 013 B 15 and 013 B 16. These two parcels were formerly part of a larger tract of land designated as Lot 13 B 01 ("Lot 01"), which Debis originally owned. *See Santos v. Santos*, 3 N.M.I. 39, 42 (1992). After Debis's death, ownership of Lot 01 passed to Nicolas, then her only surviving heir. *Id.* Upon Nicolas's death, Lot 01 was subdivided and distributed to Ramon, Enrique and Jose pursuant to the order of final distribution issued in probate cases 30 and 31 ("1979 order").[2] A map depicting the distribution was attached to that order.

The 1979 order did not mention Lots 19, 20 or 05, the lots at issue here. Enrique claims that these lots were part of the land distributed to him under the 1979 order, pursuant to a partida made by his father.

Lots 19 and 20 are access lots (i.e., roadways) across former Lot 01. Neither Lot 19 nor Lot 20 were expressly distributed to any heir in either probate case. Certificates of title were issued for Lots 19 and 20 to the "Heirs of Debis Delos Santos" in 1981. Excerpts of Record at 8-9, 12-13. The certificates of title for both lots were issued pursuant to the 1979 order. *Id.* at 2, 8, 12.[3]

Lot 05 is also an access lot, which Enrique claims.[4] He alleges that "pursuant to the express wishes of his father, Nicolas[,] . . . [Enrique] was to have received Lot [05] which was part of his original parcel." Complaint for Quiet Title to Real Property ¶ 14, *Santos v. Santos*, Civ. No. 92-1366 (N.M.I. Super. Ct. filed Oct. 16, 1992) ("complaint"). Enrique admitted that the 1979 order and attached map, which partitioned and distributed Lot 01, do not mention Lot 05. Transcript of Proceedings at 8:2-5, *Santos*, Civ. No. 92-1366 (N.M.I. Super. Ct. Mar. 17, 1993). Enrique argued to the trial court that Lot 05 was "carved out of [Lot] 01." *Id.* at 10:8-9. He also asserted that Lot 05's distribution was part of a partida allegedly effectuated by the 1979 order. *Id.* at

---

[1] The appellees Jose A. Santos, Roque A. Santos and the heirs of Vicente A. Santos join in the brief of the other appellees. Maria A. Santos joins in the brief, as well. She was not, however, named in the complaint. Despite the fact that she was not named, she was served a summons in this action. For an unidentified reason, the appellants' counsel never filed an amended complaint. Thus Maria was never named as a party. Nevertheless, she filed an answer. Similarly, Evelyn S. Benavente was not named in the complaint but she filed an answer as the representative of the heirs of Ramon A. Santos and in her individual capacity. Others, too, were served with a summons and complaint but were never named as parties to this action. The record does not indicate the relationship that any of these people have to this action.

[2] Nicolas had seven heirs. They were Ramon, Enrique, Francisca, Vicente, Jose, Asuncion and Maria.

[3] The 1979 order stated: "[T]he Northern Marianas Land Commission shall, in due course, issue Certificates of Title for the land herein distributed to the distributees as set forth herein." Excerpts of Record at 3. On September 14, 1981, certificates of title to Lots 19 and 20 were issued to the "Heirs of Debis Delos Santos" pursuant to "a[n] Order of the Trial Division of the High Court made on the 20th day of December 1979, numbered Probate Case 30 & 31." *Id.* at 8, 12.

[4] Lot 05 is "contiguous to Lots 013 B 15 and 16 and is part of the public roadway adjacent to Lot 013 B 15." Complaint for Quiet Title to Real Property ¶ 15, *Santos v. Santos*, Civ. No. 92-1366 (N.M.I. Super. Ct. filed Oct. 16, 1992).

7:17-22.[5] In 1981 a certificate of title was issued to Debis's heirs for Lot 05, pursuant to "a determination of ownership made by the [Land Title Division of the Saipan District of the Trust Territory]." Excerpts of Record at 10.

## II. ISSUES

1. Whether the trial court erred in granting the motion for summary judgment on the basis that Enrique's claim to Lots 19, 20, and 05 was barred by the doctrine of res judicata.
2. Whether the Superior Court erred in presuming that Enrique sought to set aside the distribution order in probate cases 30 and 31.
3. Whether the Superior Court's ruling that the three lots at issue belong to all seven of Nicolas's heirs was inconsistent with this Court's ruling in Santos v. Santos, 3 N.M.I. 39 (1992).

## III. DISCUSSION

### 1. Summary Judgment

 Summary judgment may be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Com. R. Civ. P. 56(c). In deciding a summary judgment motion, a court will construe the evidence and inferences drawn therefrom in favor of the non-moving party. Rios v. Marianas Pub. Land Corp., 3 N.M.I. 512, 518 (1993). If we determine that no genuine issue of material fact exists, our analysis shifts to whether the substantive law was correctly applied. Borja v. Ranga-

---

[5] Enrique's counsel represented below that this Court "makes factual findings in its [Santos v. Santos, 3 N.M.I. 39 (1992)] opinion and says that this distribution in probate cases 30 and 31 occurred pursuant to a partida." Transcript of Proceedings at 7:19-22, Santos, supra note 4. Counsel is wrong. Santos does not indicate that probate cases 30 and 31 followed a partida; the partida mentioned in Santos involved an entirely different case, entitled In re Estate of Vicente Agulto Santos, Civ. No. 88-0598 (N.M.I. Trial Ct. filed Aug. 15, 1988). See Santos, 3 N.M.I. at 44 n.3. Probate cases 30 and 31 concerned the estates of Vicente's father, Nicolas C. Santos, and his aunt, Eduvigis (Debis). Neither Santos nor probate cases 30 and 31 indicate that the 1979 distribution was made pursuant to a partida. The distribution set forth in the 1979 order may have followed a partida, but there was no record made by the parties to substantiate this claim.

mar, 1 N.M.I. 347, 355 (1990). Our review of an order granting summary judgment is de novo. Id.

### 2. Res Judicata

██ The trial court entered summary judgment in favor of the appellees pursuant to the doctrine of res judicata. "'Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" Santos, 3 N.M.I. at 49 (emphasis omitted) (quoting Allen v. McCurry, 449 U.S. 90, 94, 101 S. Ct. 411, 414, 66 L. Ed. 2d 308, 313 (1980)).

The appellees' summary judgment motion below was based on the assertion that the 1979 order incorporated a map, Excerpts of Record at 4, somehow showing that Lots 19 and 20 were to be distributed to them. On appeal, the appellees also state that the certificates of title to Lots 19 and 20 were issued to Debis's heirs based on the 1979 order and were, therefore, final. The 1979 order is the basis of their res judicata defense. The appellees conclude that these two parcels belong to Debis's heirs and thus to them as Nicolas's heirs.

As to Lot 05, the appellees state that the lot's certificate of title was also issued to Debis's heirs. They contend that the doctrine of administrative res judicata renders this ownership determination conclusive. See In re Estate of Dela Cruz, 2 N.M.I. 1, 10-11 (1991). Therefore, the appellees argue, this land also belongs to all the heirs and not to Enrique alone.

The appellees also advance an alternative basis of support for the trial court's ruling on res judicata grounds. In 1988, Enrique's two sisters, Asuncion and Maria, filed suit to set aside the 1979 order because they were not given notice of probate cases 30 and 31. Thus, they were improperly excluded from sharing in their father's estate. See Santos, 3 N.M.I. at 44 n.2, discussing Ooka v. Santos, Civ. No. 88-0367 (N.M.I. Trial Ct. filed Apr. 26, 1988). The appellees assert that Ooka bars Enrique's claim because the claim should have been brought in that action. They do not, however, offer any justification for this last assertion.

██ The appellees' motion for summary judgment was made without any supporting declarations or other documents. They relied solely on the documents attached to the complaint filed by Enrique. On appeal, they advance documents in their supplemental excerpts of record that apparently were a part of the record in other related cases, e.g., probate cases 30 and 31, but were not

expressly included in the record of this case below. These documents purportedly support the order granting summary judgment.[6]

Enrique disagrees that the 1979 order resolved the issues of ownership of Lots 19, 20, and 05. He argues that the order did not specify "the precise nature" of the "res" adjudicated in probate cases 30 and 31. Appellant's Brief at 6. While he does not dispute the ownership of the eight lots specifically distributed in the 1979 order, Enrique asserts that the order did not identify and distribute Lots 19, 20 and 05, the lots at issue here. He argues that these lots nevertheless were part of the land distributed to him pursuant to the 1979 order. He concludes that res judicata does not bar his action.

 A moving party bears the "initial and the ultimate" burden of establishing its entitlement to summary judgment. *Lopez v. Corporacion Azucarera de Puerto Rico*, 938 F.2d 1510, 1516 (1st Cir. 1991). If a moving party is the plaintiff, he or she must prove that the undisputed facts establish every element of the presented claim. *Id.* If a movant is the defendant, he or she has the correlative duty of showing that the undisputed facts establish every element of an asserted affirmative defense. *Id.* Upon satisfying this burden, the non-moving party must establish that there exists a genuine issue of material fact. *Bais v. Advantage Int'l, Inc.*, 905 F.2d 1558, 1561 (D.C. Cir. 1990).

### A. Lots 19 and 20

 Here, the burden of establishing the affirmative defense of res judicata rested with the defendants/appellees. They had the burden of establishing that no genuine issue of material fact existed with respect to the defense of res judicata, i.e., that prior actions resolved Enrique's present claim or that he should have asserted the claim in a prior action but failed to do so.

We have reviewed the 1979 order and the map attached to it. Lots 19 and 20 are not mentioned in the order. The map attached to the order is illegible and incomprehensible. Consequently, we do not find any clear indication from the map as to whom the probate court distributed Lots 19 and 20. Moreover, the "Order Amending Order of Distribution," which was subsequently entered in the same case, does not mention Lots 19 and 20. Excerpts of Record at 6.

The appellees offer no declaration establishing that the 1979 order distributed Lots 19 and 20 to Debis's heirs and thereby to them as Nicolas's heirs. The order does not mention that any unidentified lots, such as Lots 19 and 20, were to be distributed to Debis's heirs and thus to them as Nicolas's heirs, as the appellees contend it does. The 1979 order states that "[i]n the event that the names written upon the said map indicate a distribution different from that set forth [in the order], then and in such event this Order shall govern and take precedence." *Id.* at 2. This language does not necessarily mean that lots not mentioned in the 1979 order but appearing on the map attached to it were to be distributed to all of Nicolas's heirs. In summary, there is no evidence showing that the 1979 order was intended to distribute Lots 19 and 20 to all of Nicolas's heirs. We cannot and will not presume these facts.

We also fail to see how Enrique's claim is barred by *Ooka*. That action was initiated because two of Enrique's sisters were excluded by lack of notice of the probate cases from sharing in their father's estate.[7] Enrique claims that Lots 19 and 20 were part of the land distributed to him by the 1979 order, which was not changed by *Ooka*. The appellees' summary judgment motion provided no facts or documents showing the precise nature of *Ooka* and how that action precluded Enrique's claim.

In order for the appellees successfully to assert the affirmative defense of res judicata in a motion for summary judgment, they must have showed that, according to the undisputed facts, the rights to Lots 19 and 20 were adjudicated in probate cases 30 and 31, or that Enrique's claim should have been brought in *Ooka*, and thus relief was precluded. The appellees failed to meet their burden in this motion.

The fact that certificates of title were issued to the "heirs of Debis," thereby entitling the appellees to the land as Nicolas's heirs, is of no consequence here because they were issued pursuant to the 1979 order, which did not resolve the question of ownership of Lots 19 and 20. This factor distinguishes our decision (which follows) with regard to Lot 05. The certificate of title for Lot 05 was not issued pursuant to the 1979 order and it appears valid on its face.

### B. Lot 05

 As to Lot 05, the appellees assert that the certificate of title issued on September 14, 1981, evi-

---

[6] We will not consider these documents since it is not clear that the trial court relied on them.

[7] Ironically, Asuncion S. Ooka was not served in this action, either. Because of our disposition of this matter, Ooka's interest in the land at issue is not impaired. On remand, the trial court should consider whether this action may properly proceed without Ooka being named as a party.

dences their entitlement to the land. A certificate of title "shall be prima facie evidence of ownership as therein stated against the world." 2 CMC § 4251(a). The appellees have met their burden of establishing ownership in all of Nicolas's heirs.

 Enrique refuted the appellees' claim of ownership below with the conclusory statement that based on his "belief" Lot 05 was given to him by his father by partida. An adverse party "must set forth specific facts showing that there is a genuine issue for trial." Com. R. Civ. P. 56(e). Mere conclusions will not suffice. *Griggs-Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir. 1990); *Redden v. Wal-Mart Stores, Inc.,* 832 F. Supp. 1262, 1267 (N.D. Ind. 1993). Merely stating that it was his belief that he owned the land as the result of a partida did not create a factual dispute on the issue of ownership. *See Griggs-Ryan,* 904 F.2d at 115.

Enrique argued below that Lot 05 was "carved" out of former Lot 01. Transcript of Proceedings, *supra,* at 10:8-9. Nowhere in his declaration did he set forth any facts supporting this allegation. Furthermore, from the record before us, Lot 05 appears to lie outside of former Lot 01. Enrique's declaration was also silent as to the nature of the alleged partida and the nature of his entitlement under it. Accordingly, as to Lot 05 we hold that the order granting summary judgment in favor of all the heirs was correct.

### C. *The* Santos *Opinion*

Before concluding, we address Enrique's claim that the trial court's summary judgement order was inconsistent with our earlier opinion in *Santos, supra.* In *Santos* we held that Vicente, Enrique's late brother, disclaimed any interest in former Lot 01. 3 N.M.I. at 50. However, the trial court in the present action distributed the three lots at issue to all of Nicolas's heirs, including Vicente. Enrique's argument as to Vicente appears meritorious if he can show on remand that Lots 19 and 20 are encompassed by former Lot 01. Because of our disposition of this appeal, Lot 05 is the only lot belonging to all of Nicolas's heirs, including Vicente. Enrique failed to show that Lot 05 is part of former Lot 01. Consequently, there is no inconsistency between the trial court's order of summary judgment regarding Lot 05 and *Santos.*

### IV. CONCLUSION

Although Lots 19 and 20 appear from the documents and briefs to be parts of former Lot 01, the 1979 order and map do not refer to or clearly identify these lots or indicate to whom they should be distributed. The 1979 order was silent as to the distribution of Lots 19 and 20, and thus did not establish a finding or conclusion as to whether Enrique's claim was barred by res judicata for purposes of summary judgment. Similarly, the motion failed to establish how *Ooka* barred relief. Accordingly, the order granting summary judgment as to these two lots is **REVERSED**, but **AFFIRMED** as to Lot 05, and the case is **REMANDED** for further proceedings consistent with this opinion.